IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10821

_____

UNITED STATES OF AMERICA

                    Plaintiff-Appellee

v.

ROBERT BEAM RUNYAN

                    Defendant-Appellant

_____

No. 01-11207

_____

UNITED STATES OF AMERICA

                    Plaintiff-Appellee

v.

ROBERT BEAM RUNYAN

                    Defendant-Appellant

_____

Appeals from the United States District Court
           for the Northern District of Texas
_____
                    April 18, 2002
Before KING, Chief Judge, and JOLLY and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

Defendant-Appellant Robert Beam Runyan was convicted of sexual exploitation of a child in violation of 18 U.S.C. § 2251 and of distribution, receipt, and possession of child pornography in violation of 18 U.S.C. § 2252A. In two separate actions, Runyan appeals his conviction (No. 00-10821) and the district court's denial of his post-trial motion for a new trial (No. 01-11207). On September 24, 2001, we consolidated these two cases for the purposes of appeal. On December 10, 2001, this court issued a non-dispositive opinion: (1) holding that aspects of the Government's investigation violated the Fourth Amendment; and (2) remanding the case to the district court for further factfinding that would enable this court to assess the applicability of exceptions to the exclusionary rule. On January 10, 2002, the district court issued an order providing the requisite findings of fact. We now conclude our analysis of Runyan's Fourth Amendment claims and address Runyan's remaining claims, from both his appeal of his conviction and his appeal of the district court's denial of his motion for new trial. For the following reasons, we AFFIRM Runyan's convictions for receipt and possession of child pornography and for sexual exploitation of a child, but REVERSE his conviction for distribution of child pornography. We also VACATE Runyan's sentence and REMAND to the district court for entry of judgment and resentencing consistent with this opinion.

## I. Factual and Procedural Background

The facts of this case are described in detail in this court's December 10, 2001 decision. Accordingly, we only briefly reiterate the underlying facts of the case. We address specific facts pertinent to each of Runyan's remaining claims in greater detail within our discussion of each claim below.

In brief, Robert Beam Runyan ("Runyan") and his wife Judith Runyan ("Judith") separated in January of 1999. In June of 1999, Judith (accompanied at different times by her daughter and various friends) made several trips to Runyan's ranch to retrieve items of her personal property while Runyan was out-of-town. At the ranch, Judith and one of her companions found two duffel bags in the barn containing items of pornography, including Polaroid photographs of two individuals, one of whom appeared to be a very young teenager. Judith removed these items from the ranch. Judith and her companions also removed from the ranch a desktop computer and a collection of floppy disks, compact discs ("CDs"), and ZIP disks (collectively, "the disks") that were lying on the floor surrounding the computer.

One of Judith's companions, Brandie Epp, reassembled the computer at Judith's residence and examined approximately 20 of the CDs and floppy disks taken from the ranch. Epp discovered that some of these CDs and floppy disks contained images of child

3

pornography.[1]  Epp contacted the sheriff's department and turned these materials over to a deputy.  Over the next few weeks, Judith turned over various additional items found at the Runyan ranch to a number of different law enforcement agencies.  These items included the desktop computer, additional disks containing child pornography, and the duffel bags found in the barn.

Texas Ranger Bobby Grubbs ("Ranger Grubbs") used his computer to view some of the disks delivered by Judith and observed images of child pornography.  He printed out several of these images on a color printer and showed them to members of the Coleman County District Attorney's staff.  An investigator in the District Attorney's office, Darla Tibbetts, tentatively identified the girl photographed in one of the images.  An intern working for the District Attorney's office, Melissa Payne, was brought to the sheriff's office to assist with the identification.  She positively identified the girl in the pictures as Misty Metcalf ("Misty"), a former high school classmate.[2]

On June 28, 1999, upon learning that he was a potential suspect, Runyan met with Ranger Grubbs.  At this meeting, after Runyan had been given <u>Miranda</u> warnings, he stated that he found a

---

[1]  Epp did not view any of the images on the ZIP disks because the necessary hardware was not connected.

[2]  There is conflicting testimony in the record regarding whether Payne was shown Polaroid photographs or computer printouts of Misty.

bag of pornography at a rest stop.  Runyan admitted that he viewed the materials in the bag and that, out of curiosity, he used his computer to view child pornography available on the Internet.[3]

On July 7, 1999, Customs Service Special Agent Rick Nuckles ("Agent Nuckles") joined the investigation.  Agent Nuckles examined several images from each floppy disk, ZIP disk, and CD turned over by Judith and Epp.  Agent Nuckles found two images of Misty, apparently taken with a digital camera or taken with a Polaroid camera and then scanned into a computer.

Also on July 7, Tibbetts and Ranger Grubbs interviewed Misty.  Misty stated that Runyan hired her when she was a young teenager to perform odd jobs around his ranch and to iron clothes for him.  She said that he approached her when she was fifteen about posing for nude photographs.  Misty told Tibbetts that Runyan had taken sexually explicit photographs of her on numerous occasions when she was between the ages of fifteen and seventeen. She reported that Runyan had sometimes paid her approximately five dollars per photographic session and that he had promised her more money once he sold the pictures over the Internet to customers in Japan.

---

[3]     However, Runyan maintains that he never uploaded or downloaded any images containing child pornography from the Internet at these times.

5

Agent Nuckles then filed two applications for federal search warrants, supported by his own affidavits. The first application sought a warrant to search the desktop computer and all the disks for files containing illegal images. The second application sought a warrant to search Runyan's ranch house for any and all computers, computer hardware, software, and computer devices. The affidavits supporting these applications included statements made by Misty and Judith to Ranger Grubbs as well as information from Runyan's voluntary statement to Ranger Grubbs. In addition, one of the affidavits contained a statement indicating that Agent Nuckles had conducted a "cursory" review of the computer storage media. Magistrate Judge Philip Lane issued both warrants. Law enforcement officials subsequently searched Runyan's ranch house and discovered a computer backup tape that contained one picture of child pornography.

On October 13, 1999, Runyan was indicted on six counts of child pornography charges. Runyan filed three separate motions to suppress the evidence against him, primarily contending that the pre-warrant searches of the disks conducted by various law enforcement officials involved in the investigation violated his Fourth Amendment rights. The trial court held a hearing on Runyan's motions to suppress on April 20, 2000. At the close of the hearing, the trial court denied the motions, finding that the pre-warrant police searches did not violate Runyan's Fourth Amendment rights.

6

On April 21, 2000, a jury convicted Runyan of four counts:[4] Count 1 — sexual exploitation of a child in violation of 18 U.S.C. § 2251; Count 3 — distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2); Count 4 — receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); and Count 5 — possession of child pornography in violation of § 2252A(5)(B). On July 28, 2000, the district court sentenced Runyan to 240 months on Count 1; 60 months on Count 3, to be served consecutively to Count 1; and 180 months on Counts 4 and 5, to run concurrently with the sentence imposed on Count 1, for a total sentence of 300 months of imprisonment. In addition, the district court imposed a three-year term of supervised release and mandatory special assessments totaling $400.

Runyan timely appealed his convictions and his sentence, contending that: (1) the trial court erred in failing to suppress the evidence obtained directly and indirectly from the pre-warrant police searches; (2) there was insufficient evidence introduced at trial to establish the interstate commerce element of each of the four charges; (3) the trial court erred in refusing to order the Government to produce Misty's boyfriend's computer and in refusing to conduct an in camera review of evidence on that computer that Runyan contends was exculpatory; (4) the trial court erred in admitting evidence that Runyan

---

[4]     Counts 2 and 6 were dismissed prior to trial.

7

refused to consent to the search of the desktop computer; and (5) the trial court erred in not grouping all the counts of his conviction in the sentencing determination.[5]  While that appeal was pending before this court, Runyan filed a motion for new trial based on newly-discovered evidence, alleging that Misty's boyfriend's computer contained exculpatory evidence that the Government withheld prior to trial.  The district court denied this motion on September 7, 2001, and Runyan timely appealed to this court.  We consolidated Runyan's two actions for the purposes of appeal on September 24, 2001.

## II.  Runyan's Fourth Amendment Claims

Runyan seeks to suppress evidence obtained as a result of the state and federal law enforcement officials' pre-warrant searches of the disks.  Runyan argues that these searches violated the Fourth Amendment and that no exceptions to the exclusionary rule are applicable.  Runyan also seeks to suppress evidence obtained pursuant to the search warrants, arguing that such evidence is "the fruit of the poisonous tree" because these warrants were procured based on information obtained through the prior illegal searches.[6]

---

[5]     The Government concedes that Runyan was incorrectly sentenced as a result of the trial court's failure to group the counts of his conviction.

[6]     Runyan also argues that the warrants were invalid because Agent Nuckles's affidavit contained a statement that Runyan contends is materially false (i.e., a statement indicating that the desktop computer was in Runyan's sole possession from

8

In reviewing a district court's denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its conclusions regarding the constitutionality of a warrantless search <u>de</u> <u>novo</u>.  <u>United States v. Vega</u>, 221 F.3d 789, 795 (5th Cir. 2000).  We view the facts underlying the suppression determination in the light most favorable to the prevailing party, which in this case is the Government.  <u>United States v. Howard</u>, 106 F.3d 70, 73 (5th Cir. 1997).  It is the defendant's burden to prove a Fourth Amendment violation by a preponderance of the evidence.  <u>United States v. Riazco</u>, 91 F.3d 752, 754 (5th Cir. 1996).  However, once the defendant proves such a violation, the burden shifts to the government to demonstrate why the exclusionary rule should not

---

1995 to 1998) and because the affidavit did not contain any information about Misty's credibility (i.e., the fact that she was on probation).  However, a misstatement can vitiate an affidavit "only if it is established that the misstatement was the product 'of deliberate falsehood or of reckless disregard for the truth[;] [a]llegations of negligence or innocent mistake are insufficient.'"  <u>United States v. Martin</u>, 615 F.2d 318, 329 (5th Cir. 1980) (quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978)).  Similarly, omissions cannot undermine the validity of a warrant unless such omissions are "made intentionally or with a reckless disregard for the accuracy of the affidavit; negligent omissions will not undermine the affidavit."  <u>Id.</u>  The defendant bears the burden of showing by a preponderance of the evidence that a misstatement or omission was more than mere negligence. <u>Id.</u>  Runyan fails to meet this burden.  An unsupported assertion that an affidavit contains a misstatement (or an omission) does not give rise to the inference that the affiant acted with reckless disregard for the accuracy of the information presented to the magistrate, particularly where the misstated or omitted facts in question are of only minor significance to the finding of probable cause.

9

apply to the fruits of the illegal search or seizure. United States v. Houltin, 566 F.2d 1027, 1031 (5th Cir. 1978).

In our prior opinion, this court held that the police violated Runyan's Fourth Amendment rights when they conducted a warrantless examination of disks that the private searchers (Judith and Epp) had not examined. See United States v. Runyan, 275 F.3d 449, 464 (5th Cir. 2001). While we noted that the disks (and any evidence obtained as a result of the information found on the disks) were potentially subject to suppression due to this Fourth Amendment violation, we indicated that this evidence would still be admissible if the Government could demonstrate that an exception to the exclusionary rule is applicable in the instant case. We then remanded to the district court for factual findings relevant to this issue. The Government now argues that this court should apply the "independent source" exception to the exclusionary rule, which dictates that evidence obtained from an illegal search is admissible if the same evidence was also obtained from a lawful source independent of the illegality.

As we noted in our December 10, 2001 opinion, under the "independent source" exception to the exclusionary rule, the government must make two showings in order for a lawful search pursuant to a warrant to be deemed "genuinely independent" of a prior illegal search: (1) that the police would still have sought a warrant in the absence of the illegal search; and (2) that the warrant would still have been issued (i.e., that there

10

would still have been probable cause to support the warrant) if the supporting affidavit had not contained information stemming from the illegal search.  Id. at 467 (citing Murray v. United States, 487 U.S. 533, 542 (1988)).  In the instant case, the Government contends that the magistrate judge would have issued the two warrants permitting the police to search Runyan's computer and disks and Runyan's home even if the police had never conducted a pre-warrant search of the storage media.  According to the Government, the information that the police obtained from interviews with Judith and Misty and from Runyan's admissions in his statement to Ranger Grubbs was sufficient to compel the police to seek a warrant and to establish probable cause for a warrant to issue.  Thus, because the police obtained the same information acquired through their pre-warrant search of the disks from the subsequent, lawful searches pursuant to the warrant, these subsequent searches were an "independent source" of the images on the disks and this evidence is admissible at trial.

In our December 10, 2001 opinion, we noted that one of the affidavits submitted by Agent Nuckles in support of the warrant applications contained a brief reference to his pre-warrant search of the computer storage devices.  We found that the inclusion of this statement in the warrant application raised a question about what role the pre-warrant searches might have played in the issuance of the warrants.  Because the district

11

court made no factual findings at the suppression hearing enabling this court to address this issue, we remanded the case to the district court "to conduct such proceedings as are necessary to make findings of fact addressing" these questions.

On January 3, 2002, the district court conducted an evidentiary hearing on these issues. Agent Nuckles, Ranger Grubbs, and Magistrate Judge Philip Lane all testified at this hearing. On January 10, 2002, the district court entered, inter alia, the following factual findings addressing whether the police would have sought the warrant in the absence of the illegal search:

> 7. Agent Nuckles'[s] decision to seek the search warrants in this case was unaffected by the fact that the police, including himself, may have looked at more disks than did the private parties.
>
> 8. The Court finds that the police would have sought the warrants even if they had not exceeded the scope of the private party searches.

In support of these findings, the district court noted that:

> [T]he police, in total, received thirteen (13) recordable compacts [sic] discs in this case, only ten (10) of which contained evidence of child pornography. Of those thirteen, eleven initially came from Brandie Epp and Judith Runyan and had clearly been searched by private parties. . . . Assuming without deciding that the two (2) recordable CDs not initially turned over contained child pornography images, then eight (8) of the eleven (11) CDs that were initially turned over and previously searched by private citizens necessarily contained images of child pornography . . . . The fact that the

12

> police "searched" all the storage media and additionally recovered one (1) zip disk, 13 to 15 floppies, and between zero (0) and two (2) additional CDs containing child pornographic images did not tip the balance in favor of the decision to seek warrants. In other words, 15 floppies plus 10 CDs plus 1 zip disk equals approximately 26 external storage media containers. The fact that the police determined that all 26 contained child pornographic images instead of limiting their pre-warrant activities to 8 of the 26 did not tip the scale in favor of them seeking warrants.

We review these factual findings for clear error. See United States v. Grosenheider, 200 F.3d 321, 328 (5th Cir. 2000). Runyan contends that the district court's findings are clearly erroneous because Agent Nuckles's inclusion of a reference to his "cursory" pre-warrant review of the disks in one of his affidavits signals that his decision to seek the warrant was motivated by his examination of the disks. We disagree. The fact that Agent Nuckles made a passing reference to his prior illegal search activity in his warrant application is not dispositive to our determination whether he would have sought the warrant in the absence of the prior illegal searches.[7] Our review of the record reveals ample support for the district

---

[7] This is not to say that discussion of prior illegal search activity in a warrant application is irrelevant in assessing whether the police would have sought a warrant in the absence of a prior illegal search. We simply find that, under the circumstances of the instant case, brief reference to the prior illegal search in the warrant application does not provide conclusive evidence of Agent Nuckles's motivation in seeking the warrant.

court's finding that Agent Nuckles would have sought the warrants even if he had limited his pre-warrant examination to the same disks that were examined by the private searchers.

As Agent Nuckles testified at the hearing on remand, the statements provided by Judith and Misty, along with Runyan's statement to Ranger Grubbs, provided sufficient justification for Agent Nuckles to seek a warrant to search Runyan's home and computer equipment. Moreover, seeking a warrant under such circumstances was apparently required by the investigative policies of the Customs Service. Under these circumstances, the district court's finding that Agent Nuckles would have sought both warrants even if he had never exceeded the scope of the private search is not clearly erroneous.

The second prong of the Murray inquiry asks whether the issuance of the warrant (as opposed to the decision to seek the warrant) was independent of any illegal search activity. As Runyan correctly points out, when a search conducted pursuant to a warrant is alleged to be an "independent source" of otherwise tainted evidence and the warrant application contains information obtained from the prior illegal search (or, as in the instant case, contains a reference to the prior illegal search), this court's task is to determine whether there would have been probable cause to support the issuance of the warrant had the "tainted" information been omitted from the application. See United States v. Restrepo, 966 F.2d 964, 966 (5th Cir. 1992)

14

(agreeing that the "proper approach is to excise from the warrant affidavit those facts that were gleaned from the illegal search, and then to consider whether the affidavit's remaining information is sufficient to constitute probable cause").  This probable cause inquiry is a question of law that we review de novo.  United States v. Hassan, 83 F.3d 693, 697 (5th Cir. 1996).

In the instant case, the only information that must be stricken from Agent Nuckles's affidavits to "purge" the affidavits of any reference to the illegal pre-warrant search is a short statement in one of the affidavits indicating that Nuckles conducted a "cursory" review of the disks.[8]  We find that

---

[8]     Runyan contends that Misty's testimony must be excised from the affidavits as well because her identification stemmed from the illegal searches.  In our December 10 opinion we noted that the record contains conflicting testimony regarding whether Melissa Payne identified Misty from the images of Misty that were printed out from the disks or from the Polaroid photos of Misty. Because this court is bound to interpret the facts in the light most favorable to the Government when reviewing a trial court's denial of a motion to suppress, we assumed in our prior opinion that Misty was identified via the Polaroids and that her identification was independent of the illegal search activity. Runyan, 275 F.3d at 465-66.  Runyan contends that Misty's testimony is nonetheless "tainted" by the illegal search because Darla Tibbetts (who "tentatively" identified Misty before investigators sought Melissa's assistance) identified Misty via images taken from the disks.  While it is not at all clear from the record whether Tibbetts's tentative identification of Misty was based on computer images or Polaroids, this distinction is ultimately not dispositive.  Misty's testimony remains "untainted" by the illegal search.  Even if Tibbetts did, in fact, tentatively identify Misty from computer printouts, Tibbetts would have made the same tentative identification upon seeing the Polaroid photographs.  Misty's identity would inevitably have been discovered and thus her identification is not a "tainted" product of the prior illegal search activity. See, e.g., United States v. Singh, 261 F.3d 530, 535 (5th Cir.

15

there remains ample evidence in the applications to support a finding of probable cause. This conclusion is bolstered by the district court's finding on remand that Magistrate Judge Lane would have issued the warrants even if one of the warrant applications had not contained a reference to Agent Nuckles's prior illegal search activities.[9] This finding indicates that the magistrate judge, who is more familiar with the detailed facts of this case, would have arrived at the same probable cause determination that this court reaches today.

In conclusion, we find that the searches conducted pursuant to the two warrants issued by Magistrate Judge Lane are an independent source of the evidence obtained in the illegal pre-warrant searches of the disks. This evidence was properly deemed admissible. Moreover, based on our determination that the warrants were issued independently of the prior illegal search, we find that any additional evidence obtained pursuant to these warrants is not the "fruit of the poisonous tree" and is

---

2001) (noting that otherwise suppressible testimony or evidence should be admitted if there is "a reasonable probability that the evidence would have been discovered from an untainted source").

[9] The district court found, based on Magistrate Judge Lane's unequivocal testimony, that he "would have issued the warrant if the phrase had not been present."

16

therefore admissible.  Thus, the district court did not err in refusing to suppress any of the evidence against Runyan.[10]

### III.  Runyan's Sufficiency of Evidence Claims

Runyan challenges the sufficiency of the evidence supporting all four counts of conviction: sexual exploitation of a child in violation of 18 U.S.C. § 2251, distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography in violation of 18 U.S.C. § 2252A(5)(B).  This court reviews a challenge to the sufficiency of the evidence supporting a conviction de novo, considering "whether . . . a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." United States v. De Leon, 170 F.3d 494, 496 (5th Cir. 1999). "All reasonable inferences from the evidence must be construed in favor of the jury verdict."  United States v. Martinez, 975 F.2d 159, 161 (5th Cir. 1992) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)).

---

[10]  Runyan also appears to argue, albeit obliquely, that all the disks removed from his ranch by Judith should be suppressed because Judith entered Runyan's property illegally. We need not address the merits of this contention.  The record contains conflicting testimony regarding whether Judith had Runyan's permission to retrieve her property from the ranch. Because we are bound to view the evidence in the light most favorable to the Government in reviewing the district court's denial of a motion to suppress, we must presume that Judith had permission to enter the ranch and retrieve her property. Accordingly, Judith's private search was not illegal under Texas law.

Runyan argues that the evidence was insufficient to sustain a conviction for sexual exploitation of a child because the Government failed to prove that Runyan knew the images of Misty would be transported in interstate or foreign commerce.  Runyan similarly argues that the evidence was insufficient to sustain a conviction for distribution, receipt, or possession of child pornography because the Government failed to prove that any illegal image was transported in interstate commerce.  We consider each of these claims in turn.

    A.   The Sufficiency of the Evidence Regarding
         Sexual Exploitation of a Child

The jury convicted Runyan of sexual exploitation of a child in violation of 18 U.S.C. § 2251, based on Runyan's conduct in photographing Misty Metcalf.  Section 2251 reads, in pertinent part, as follows:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251 (2000).  Runyan argues that the evidence presented at trial was insufficient to demonstrate that he "knew

or had reason to know" that the images of Misty would be transported in interstate or foreign commerce.

According to Misty's testimony at trial, when Runyan initially asked her to pose for nude photographs, he explained to her that he was planning to sell the photographs to people in another country. Misty further testified that Runyan said he would use the Internet to solicit people to buy these photographs. Runyan contends that Misty's testimony is insufficient to support his conviction because such statements do not demonstrate that he "knew or had reason to know" that images of child pornography would be transported in interstate or foreign commerce. According to Runyan, a statement indicating that an individual is planning to sell images over the Internet is insufficient to establish the interstate nexus required for conviction under § 2251.

As Runyan correctly notes, this circuit has not yet decided whether an Internet transmission, in and of itself, constitutes interstate transportation sufficient to satisfy the interstate commerce element of § 2251 (i.e., the element requiring that an offender must "know[] or ha[ve] reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed"). In the instant case we now squarely face this question. We join the First Circuit in holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus

19

constitutes transportation in interstate commerce" for the purposes of 18 U.S.C. § 2251. <u>United States v. Carroll</u>, 105 F.3d 740, 742 (1st Cir. 1997).[11]

The factual circumstances at issue in <u>Carroll</u> are remarkably similar to the instant case. In <u>Carroll</u>, the defendant's ex-wife found pornographic Polaroid photographs of the defendant's thirteen-year-old niece among his personal effects. <u>Id.</u> at 741. After an FBI investigation, the defendant was charged with sexual exploitation of a child in violation of 18 U.S.C. § 2251. The victim testified at trial that the defendant informed her at the time the photographs were taken that he intended to scan the images into a friend's computer and distribute them over the Internet. <u>Id.</u> at 742. The defendant was convicted and subsequently appealed, challenging the sufficiency of the evidence supporting his conviction. Like Runyan, the defendant in <u>Carroll</u> argued that the victim's testimony was insufficient to establish that he "knew or had reason to know" that the pictures

___

[11] While the First Circuit appears to be the only circuit court that has directly addressed this question in the context of 18 U.S.C. § 2251, a number of other circuits have agreed that transmission of material via the Internet constitutes transportation in interstate commerce in related contexts. <u>See, e.g.,</u> <u>United States v. White</u>, 2 Fed. Appx. 295, 298 (4th Cir. 2001) (addressing 18 U.S.C. § 2252A); <u>United States v. Thomas</u>, 74 F.3d 701, 706-09 (6th Cir. 1996) (addressing 18 U.S.C. § 1465); <u>United States v. Smith</u>, 47 M.J. 588, 592 (N.M. Ct. Crim. App. 1997) (addressing 18 U.S.C. § 2252); <u>see also</u> <u>United States v. Campos</u>, 221 F.3d 1143 (10th Cir. 2000) (upholding a conviction under 18 U.S.C. § 2252 based on an Internet transmission without explicitly discussing whether Internet transmission constitutes transmission in interstate commerce).

would be transported in interstate commerce.  The First Circuit disagreed, holding that the victim's testimony was sufficient "to sustain a finding that the [defendant] intended to transport the pornographic depictions in interstate commerce (and therefore knew that they would be so transported)."  Id.  While the Carroll court recognized that there were alternate ways that the Government could have established the interstate commerce element of the offense in that case, the court clearly indicated that the victim testimony alone was sufficient to establish the required interstate commerce connection.  Id. (indicating that the victim's testimony, "if believed, proved the government's point" that the defendant intended to transport child pornography in interstate commerce).  We similarly conclude in the instant case that Misty's testimony suffices to sustain the jury's finding that Runyan "knew or had reason to know" that the images of her would be transported in interstate commerce via the Internet.

Runyan further argues that Misty was an unreliable witness whose testimony was not credible and that her testimony thus cannot form the sole basis of his conviction for sexual exploitation of a child.  While we recognize that Misty's testimony was not without its inconsistencies, Runyan's criticisms of Misty's credibility go to the weight of the evidence, not its sufficiency.  In assessing the sufficiency of the evidence supporting Runyan's conviction, this court does not evaluate the weight of the evidence or the credibility of

witnesses.  See United States v. Delgado, 256 F.3d 264, 273-74 (5th Cir. 2001).  Credibility assessments are squarely within the jury's domain, and we decline Runyan's invitation to second-guess the jury's assessment of Misty's testimony.  Accordingly, we find that the Government presented sufficient evidence to support Runyan's conviction for sexual exploitation of a child.

B.  The Sufficiency of the Evidence Regarding Distribution, Receipt, and Possession of Child Pornography

Runyan also challenges the sufficiency of the evidence supporting his convictions for distribution, receipt, and possession of child pornography under 18 U.S.C. § 2252A.  Runyan contends that the Government failed to demonstrate adequately that any of the illegal images introduced at trial were "transported in interstate commerce," a required element of each of these three charges.  Specifically, Runyan argues that the Government never proved that any of the particular images in question came from the Internet, rather than from purely intra-state sources.  According to Runyan, the Government impermissibly relied solely on inference to establish the interstate commerce connection required under § 2252A.

In support of his argument, Runyan relies primarily on this court's decision in United States v. Henriques, 234 F.3d 263 (5th Cir. 2000).  In that case, defendant Bart Henriques was convicted of possession of child pornography under a prior version of § 2252A that required the Government to prove possession of three

or more images of child pornography.  Henriques, 234 F.3d at 264-65.  Henriques's conviction was based on exactly three images.  He challenged his conviction, arguing that the evidence was insufficient to support a finding that the three images were transported in interstate commerce.  Id. at 264.  This court agreed and reversed Henriques's conviction.  We noted that transport of goods through interstate commerce is an element of the crime under § 2252A, and we adopted the Tenth Circuit's holding that, when the interstate commerce element of § 2252A is established via Internet transmission, the Government must "independently link all the images upon which a conviction is based to the Internet" in order to obtain a conviction.  Henriques, 234 F.3d at 266 (citing in United States v. Wilson, 182 F.3d 737, 744 (10th Cir. 1999)).

In examining the particular images at issue in Henriques, we recognized that two of the three images in question were connected to interstate commerce by evidence introduced at trial.  A witness in that case testified at trial that she observed Henriques viewing images of child pornography on the Internet, including one of the three images supporting his conviction.  Id. at 267.  Another of the images supporting Henriques's conviction had a website address embedded on it.  Id.  While we indicated that such internal evidence of an Internet origin was most likely sufficient to "independently link" this image to interstate commerce, we ultimately concluded that there was still

23

insufficient evidence to support Henriques's conviction because there was <u>no</u> evidence indicating that the third image at issue came from the Internet. We deemed the Government's proffered evidence – demonstrating that Henriques had access to the Internet, and that his computer contained pornographic material – insufficient to establish the requisite connection between the third image and interstate commerce. <u>Id.</u> at 266-67. Moreover, we indicated that the Internet link established for the first two images supporting Henriques's conviction could not be imputed to the third image because each image had to be independently linked to the Internet. <u>Id.</u> at 267.

Runyan contends that, as in <u>Henriques</u>, the Government in the instant case failed to "independently link" any of the images supporting his convictions for possession, receipt, and distribution of child pornography to interstate commerce. The Government responds that a rational jury could have found that the interstate nexus was established in this case. The Government points out that Runyan admitted in his initial confession to Agent Nuckles: (1) that Runyan knew the CDs taken from his home contained child pornography that had come from the Internet, and (2) that he had received images of child pornography from the Internet by accessing newsgroups and viewing images. The Government further notes that both the defense expert, Chancey Green, and the Government's expert, Agent Wargo, testified at trial that some of the images on the disks found by

24

Judith and on the hard drive of Runyan's desktop computer came from the Internet.  Finally, the Government points to Runyan's statements to Misty indicating that he trafficked internationally in child pornography as further evidence that the Government sufficiently established the interstate commerce nexus underlying Runyan's convictions for distribution, receipt, and possession of child pornography.

Before delving into the substance of the parties' arguments, it merits notice that, unlike the defendant in Henriques, Runyan was charged and convicted under the current version of 18 U.S.C. § 2252A, which requires distribution, receipt, or possession of only one image in order to sustain a conviction.[12]  18 U.S.C. § 2252A reads, in pertinent part:

> (a) Any person who--
>   (1) knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography;
>   (2) knowingly receives or distributes--
>     (A) any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or
>     (B) any material that contains child pornography that has been mailed, or shipped

---

[12]     In certain circumstances, a defendant can raise the fact that he possessed, received, or distributed less than three images of child pornography as an affirmative defense under the current version of the statute.  See 18 U.S.C. § 2252A(d) (2000). Runyan did not raise such a defense in the instant case. Moreover, the existence of this affirmative defense does not alter the nature of the interstate commerce nexus requirement under the current version of the statute.

25

or transported in interstate or foreign commerce by any means, including by computer;
...
   (5) either--
     (A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or
     (B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer,
shall be punished as provided in subsection (b).

18 U.S.C. § 2252A (2000).

Runyan apparently reads Henriques to suggest that the Government must provide direct evidence (akin to the eyewitness testimony addressing the first image in Henriques) in order to provide the requisite "independent link" between an image and the Internet. This argument mischaracterizes our holding in Henriques. Henriques establishes that the Government must provide some evidence linking the specific images supporting the conviction to the Internet in order to establish an interstate commerce connection under § 2252A. Henriques, 234 F.3d at 266. Thus, as we indicated in Henriques, it is not enough for the

26

Government merely to introduce evidence indicating that the defendant had Internet access and that the defendant, at some point in time, accessed or downloaded images from pornography websites or newsgroups.  Id. at 266-67.  Rather, the Government must make a specific connection between the images introduced at trial and the Internet to provide the requisite jurisdictional nexus.  We did not suggest in Henriques that circumstantial evidence would be insufficient to establish such a link.  Indeed, Henriques implicitly supports the notion that circumstantial evidence linking a particular image to the Internet (such as the presence of a website address embedded on the image) can be sufficient evidence of interstate transportation to support a conviction under § 2252A.  Id. at 267 (noting that one of the three images in question "contain[ed] a world-wide web address embedded on the image" and that "it is possible for this 'internal evidence' to support a connection to the Internet"); accord United States v. Hilton, 257 F.3d 50, 54-55 (1st Cir. 2001) (adopting the analysis of Henriques and concluding that "the government [i]s not required to provide 'direct' evidence of interstate transmission," thus upholding the defendant's conviction for receipt and possession of child pornography based on expert testimony opining that the particular images at issue in that case most likely originated from the Internet).

Viewing the evidence in the instant case, as we must, in the light most favorable to the verdict, there is adequate

circumstantial evidence to tie particular images of child pornography that were introduced into evidence at trial to the Internet. For example, one image obtained from the hard drive of Runyan's computer had a website address embedded on it and contained language advertising the child pornography available at that website: "All Uncensored Child Nude and Porno Lolita Pics"; "Asian Nudist and Others"; and "Ultimate Lolita Nudist Site." The website address and this advertising language provides circumstantial evidence that this image was obtained from the Internet. In addition, the Government's expert, Agent Wargo, testified at trial as to his opinion that this image came from the Internet. This evidence is sufficient to enable a rational jury to find that Runyan received and possessed an image of child pornography that was "transported in interstate commerce" within the meaning of § 2252A. Accordingly, there was sufficient evidence to support Runyan's convictions for receipt and possession of child pornography.

Runyan's conviction for distribution of child pornography is more problematic. The distribution charge against Runyan was not based on any evidence indicating that Runyan transmitted to others the images he had stored on the disks or on the hard drive of his computer. Instead, this charge was apparently based on Runyan's expressed intent to distribute via the Internet the images of Misty that he created. However, the Government has not provided sufficient evidence directly tying the images of Misty

28

to the Internet for the purposes of the distribution charge. Misty's testimony alone is insufficient to establish the interstate commerce element of a conviction under § 2252A.

Unlike a conviction for sexual exploitation of a minor under § 2251, which requires the Government to prove that the defendant knew or had reason to know at the time that the images were created that those images "will be transported in interstate or foreign commerce or mailed," 18 U.S.C. § 2251 (2000) (emphasis added), a conviction for distribution of child pornography under § 2252A requires the Government to prove that the defendant knowingly distributed "any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer" or "any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer," id. § 2252A (emphasis added). As the language of the two sections suggests, while evidence of a defendant's intent to distribute child pornography via interstate commerce is adequate to satisfy the jurisdictional element of § 2251, see, e.g., United States v. Buculei, 262 F.3d 322, 329 (4th Cir. 2001) (noting that § 2251's jurisdictional element limits this section's applicability to "a discrete set of activities -- defendants who plan to transport visual depictions of minors engaged in sexually explicit conduct in interstate

commerce") (emphasis added), such evidence of intent appears insufficient to satisfy the jurisdictional element of § 2252A.

There was no evidence presented at trial indicating that Runyan actually disseminated the pictures of Misty to anyone, much less that he had transported these images in interstate or foreign commerce via the Internet or any other means. Nor was there any evidence presented at trial indicating that Runyan actually distributed any of the other images contained on the disks or on the hard drive of his computer by transporting these images in interstate or foreign commerce. Under these circumstances, no reasonable jury could have found: (1) that Runyan knowingly distributed child pornography or material containing child pornography; or (2) that such child pornography or material containing child pornography was mailed, shipped or transported in interstate or foreign commerce. Accordingly, we reverse the distribution count of Runyan's conviction.

## IV. Runyan's Claims Based on the Wood Computer

In the course of preparing Runyan's defense, his attorneys purchased a computer from Misty's ex-boyfriend, Nathan Wood ("the Wood computer").[13] The defense retained possession of this computer for four months, apparently without investigating its

---

[13] Wood testified for the defense at trial. His testimony indicated that while he and Misty were dating, he often observed Misty using the computer to view and download pornography from the Internet. Wood also testified that he observed Misty sending these images to others via electronic mail, claiming that the images were pictures of her.

30

contents.  Shortly before trial, the defense retained an expert, Chancey Green, to analyze the computer.  Green informed Runyan's attorneys that there were pornographic images on the computer depicting what he believed to be underage females.  Runyan's attorneys then contacted officials from the United States Customs Service.  According to the defense, these officials instructed Runyan's attorneys to turn the Wood computer over to the Customs Service.  The Customs Service officials also instructed Green to destroy the "mirror image" of the Wood computer's hard drive that he had created.

Runyan contends that, from the time that his attorneys relinquished the Wood computer to the Customs Service until the time of trial, the defense was denied access to the computer.  The Government, in contrast, maintains that the defense had an open invitation to examine the Wood computer and its contents while the computer was in the possession of the Customs Service.  At the request of the Government, Agent Nuckles conducted an analysis of the contents of the Wood computer's hard drive.  This analysis was apparently not completed until after the trial began.

Both parties agree that the Wood computer was available at trial.  Indeed, the defense introduced the computer into evidence.  On the second day of trial, Runyan made a motion requesting that the court "order the United States to produce copies of all graphic images on [the Wood] computer, examine them

31

in camera, and enter an order making all said images and/or computer information [available] to Defendant's counsel."  Runyan alleged that this hard drive contained images of child pornography that would exculpate him.[14]  On the fourth day of trial Runyan made a similar motion requesting that the court "order the United States to produce copies of all graphic images on this computer and deliver them to Defendant's counsel."  The district court denied both motions.

Green testified at trial for the defense, stating that he had found images of what he believed to be underage females on the Wood computer.  Agent Nuckles testified at trial that he found no images of child pornography on the Wood computer.  Agent Nuckles conceded that he found "questionable" images during his analysis, but stated that he found "no five and six-year-old [child] porn images."  Neither party introduced any images from the Wood computer into evidence at trial.

Subsequent to trial, Runyan's newly-retained appellate counsel requested and received from the Government a mirror image of the Wood computer's hard drive.  Two additional defense experts, Dr. Hill and Dr. Andrus, then examined a sample of

---

[14]    Runyan's theory was that any images of child pornography found on the Wood computer would support his contentions: (1) that it was Misty, not Runyan, who sent and received images of child pornography from Runyan's computer; and (2) that Misty (with the assistance of other unknown parties) must have created the photographs of herself, mimicking the "poses" she saw in the images she downloaded onto Wood's computer.

thirty-three images from the computer.  Dr. Hill concluded that eleven images in the sample were girls under age sixteen; Dr. Andrus concluded that ten images in the sample were girls under age sixteen.  Runyan alleges that these images constitute exculpatory evidence because they support his theory that Misty was responsible for creating images of herself, and that it was Misty, not Runyan, who intended to distribute these images over the Internet.

### A.  Runyan's Claims on Direct Appeal

In his direct appeal of his criminal conviction (No. 01-10821), Runyan contends that the district court erred in refusing to order the Government to produce images from the Wood computer that are, according to Runyan, exculpatory under Brady v. Maryland, 373 U.S. 83 (1963).  Runyan similarly argues that the district court erred in refusing to conduct an in camera review of materials on the Wood computer to determine if exculpatory evidence was present.  The district court denied these motions on the ground that there was no need for court-ordered production or in camera inspection because the computer was readily available to the defense at the time these motions were made during trial.

Methods of enforcing disclosure requirements are generally left to the sound discretion of the trial court.  See United States v. Valera, 845 F.2d 923, 927 (11th Cir. 1988).  However, this court has held that, under certain circumstances, refusal to

33

compel production or conduct an in camera review of Brady materials can be reversible error.  See, e.g., Williams v. Dutton, 400 F.2d 797, 799-800 (5th Cir. 1968) (refusal to compel production); United States v. Gaston, 608 F.2d 607, 612-14 (5th Cir. 1979) (refusal to conduct an in camera review).  The district court in the instant case apparently concluded that Brady was not implicated because the images in question were not being "suppressed" by the Government.  We agree.

We review a district court's Brady determinations de novo.  United States v. Dixon, 132 F.3d 192, 199 (5th Cir. 1997).  In order to establish a due process violation under Brady, a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment.  373 U.S. at 87.  Evidence is material under Brady when there is a "reasonable probability" that the outcome of the trial would have been different if the suppressed evidence had been disclosed to the defendant.  United States v. Gonzales, 121 F.3d 928, 946 (5th Cir. 1997) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).  However, a defendant seeking merely an in camera inspection to determine whether a particular source contains Brady material "need only make a 'plausible showing' that the file will produce 'material' evidence."  United States v. Lowder, 148 F.3d 548, 551 (5th Cir. 1998) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 58 n.15 (1987)).

34

In addressing Runyan's motions to compel production and <u>in camera</u> review of the images on the Wood computer, we need not determine whether the images on the Wood computer were "material" under <u>Brady</u> and its progeny. We agree with the district court that, <u>at the time of trial</u>, the Wood computer was not being "suppressed." An order compelling the Government to produce images on the Wood computer (or, similarly, an order requiring production of these images for the purposes of <u>in camera</u> review) would have served no purpose. As the district court correctly recognized, "the defense had full access to [the Wood] computer and its contents during the trial." Indeed, the record confirms that the defense was fully aware that the Wood computer was available for inspection at the time of trial.

Accordingly, the only effect of an order compelling production (or compelling production for the purposes of an <u>in camera</u> inspection) would have been to require the Government, rather than the defense, to turn on the computer and examine the images contained therein. However, <u>Brady</u> does not require such action by the Government. <u>Cf.</u> <u>United States v. Mulderiq</u>, 120 F.3d 534, 541 (5th Cir. 1997) (holding that the Government's <u>Brady</u> obligations do not require it to "point the defense to specific documents within a larger mass of material that it has already turned over") (quoting <u>United States v. Mmahat</u>, 106 F.3d 89, 94 (5th Cir. 1997)) (internal quotations omitted). Evidence is not "suppressed" if the defendant "knows or should know of the

35

essential facts that would enable him to take advantage of it. . . . . The Government is not required, in other words, to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." United States v. Shoher, 555 F. Supp. 346, 352 (S.D.N.Y. 1983) (internal citations omitted); see also Mulderiq, 120 F.3d at 541 ("[W]hen information is fully available to a defendant at the time of his trial and his only reason for not obtaining and presenting the evidence to the court is his lack of reasonable diligence, the defendant has no Brady claim.") (quoting United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) (internal quotations omitted)).[15] Because there was no Government "suppression" of the images on the Wood computer at the time of trial, the district court properly denied Runyan's motions to compel production of these images.

B.  Runyan's Claims in His Motion for New Trial

A more difficult question is presented by Runyan's motion for new trial based on newly-discovered evidence.  Runyan argues that the defense was denied access to the Wood computer during the time period between the Customs Service's acquisition of the

_____

[15]  Indeed, remarkably little "diligence" would have been required of the defense in the instant case.  The record reveals that all of the relevant images and video clips from the Wood computer fit on a single CD.  Thus, as the district court found, "it would not [have taken] long at all to view all the" relevant files from the Wood computer, even during the course of a busy trial.

computer and the trial.  Runyan contends that because he was
prevented from accessing the Wood computer during this time
period, he was unable to make a meaningful analysis of the
potentially exculpatory images on the computer.  Thus, according
to Runyan, his post-trial expert analysis of the images from the
Wood computer, which confirms that some of these images did
depict individuals under the age of sixteen, is "newly-discovered
evidence" that he was unable to obtain prior to trial due to the
Government's pre-trial suppression of the computer.

    Even assuming, arguendo, that that the Government withheld
the Wood computer prior to trial and that the results of the
defense's post-trial analysis can thus appropriately be deemed
"newly-discovered evidence," a new trial is not warranted.  The
defense's post-trial analysis of the images from the Wood
computer fails to satisfy Brady's materiality requirement.

    This court reviews a district court's denial of a motion for
new trial for abuse of discretion.  United States v. Jaramillo,
42 F.3d 920, 924 (5th Cir. 1995).  However, when the newly-
discovered evidence is alleged to be exculpatory evidence that
the Government withheld in violation of Brady, we review any
Brady determinations de novo.  United States v. Gonzales, 121
F.3d 928, 946 (5th Cir. 1997).  As a general rule, to obtain a
new trial based on newly-discovered evidence, a defendant must
demonstrate that: (1) the evidence was discovered after trial;
(2) the failure to discover the evidence was not due to the

37

defendant's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) a new trial would probably produce a new result. United States v. Williams, 985 F.2d 749, 757 (5th Cir. 1993). However, when a motion for new trial based on newly-discovered evidence raises a Brady claim, this court instead applies the three-prong Brady test to determine whether a new trial is appropriate. See, e.g., Gonzales, 121 F.3d at 946 (applying the three prong Brady test in assessing a motion for new trial based on an alleged Brady violation); accord United States v. Conley, 249 F.3d 38, 45 (1st Cir. 2001) (noting that the three-part Brady test – rather than the five part test governing motions for new trial – is applicable "where a defendant claims that the newly-discovered evidence should have been produced under Brady"); United States v. Quintanilla, 193 F.3d 1139, 1149 n.10 (10th Cir. 1999) ("Evaluation of a Brady claim asserted in a motion for a new trial involves an application of the three [Brady] elements identified above, and not the five-prong . . . test utilized in typical newly discovered evidence claims.").

As noted above, to establish a due process violation under Brady, a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment. 373 U.S. at 87. Evidence is material under Brady when there is a "reasonable probability" that the outcome of the

trial would have been different if the evidence had been disclosed to the defendant.  See Bagley, 473 U.S. at 682.   A "reasonable probability" is established when the failure to disclose the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  Kyles v. Whitley, 514 U.S. 419, 435 (1995).  As we noted in Gonzales, this standard does not require a defendant to establish that he would have been acquitted had the evidence been disclosed.  121 F.3d at 946.  However, the defendant "must establish that the suppression of exculpatory evidence by the government 'undermines confidence in the outcome of the trial.'"  Id. (quoting Kyles, 514 U.S. at 434).

It merits emphasis that the evidence in question in the instant case (i.e., the evidence that the Government allegedly prevented the defense from accessing) is not the Wood computer or even the images contained on the Wood computer.  Rather, the "newly discovered" Brady evidence is the expert analysis of these images that the defense was able to obtain after trial, but was allegedly unable to obtain prior to trial.  Thus, this court's task is to determine whether the availability of such expert analysis at trial would have placed "the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435.

As noted above, Runyan's attorneys initially hired Chancey Green to examine the Wood computer prior to the time that the

39

defense relinquished the computer to the Customs Service. Although Green was apparently unable to conduct a complete analysis of the images on the Wood computer, he did testify at trial that he saw images of what he believed to be child pornography (specifically, images of "young girls") on the computer.  Agent Nuckles also testified at trial regarding the contents of the Wood computer, indicating that he found "no evidence of actual child pornography."  However, Nuckles conceded that there were some "questionable" images on the Wood computer. In light of this testimony, it is clear that both the trial court and the jury were fully aware that the Wood computer contained "borderline" images that might have constituted child pornography.  As the district court correctly noted, Runyan's post-trial expert analysis "only verified this information."

Runyan contends that this verification is nonetheless "material" within the meaning of Brady because such testimony would have bolstered Runyan's theory that Misty was responsible for creating the pornographic images of herself.  However, in light of the compelling evidence that Runyan was personally involved in taking the pornographic photographs of Misty,[16] the

_____

[16] Even apart from Misty's testimony – which the jury apparently credited – there is ample evidence in the record indicating that Runyan was involved in photographing Misty.  It is uncontroverted that the pornographic photographs of Misty were taken inside Runyan's home and his place of business.  In addition, as previously noted, the Polaroid photographs of Misty were found in Runyan's barn and digitized images of Misty were found on Runyan's computer.  Finally, Judith testified at trial

40

defense's alternate theory explaining the origin of these images is extremely weak.[17]  Under the circumstances of this case, we cannot say that the inclusion of additional evidence at trial providing indirect support (if any) for this demonstrably weak defensive theory would have placed the case in such a different light as to undermine confidence in the verdict.  Cf. Wright v. United States, 559 F.Supp. 1139, 1146 (E.D.N.Y. 1983) ("Brady . . . does not require the government to anticipate all possible defenses and provide the defendant with otherwise irrelevant information to bolster one possible factual theory, particularly where . . . the theory itself . . . is demonstrably implausible."), aff'd, 732 F.2d 1048 (2d Cir. 1984).  We find that there is no reasonable probability that the outcome of the trial would have been different had Runyan been able to present expert analysis of the images on the Wood computer.

Runyan also contends that the district court erred in denying his motion for a new trial without conducting an

_____

that she recognized Runyan's hand in one of the photographs of Misty.

[17]  In addition, the presence of child pornography on Nathan Wood's computer provides only indirect support for this defensive theory.  No images of Misty were found on Wood's computer.  The defense explained at oral argument that the presence of child pornography on Wood's computer nonetheless supports Runyan's theory that Misty was responsible for creating pornographic images of herself.  Specifically, Runyan argues that, because the poses in the pictures found on the Wood computer were similar to the poses in the images of Misty, Misty must have learned techniques for pornographic modeling from the images she viewed on the Wood computer.

evidentiary hearing.  This court recognizes that a district court may rule on a motion for new trial without conducting an evidentiary hearing.  See United States v. Blackburn, 9 F.3d 353, 358 (5th Cir. 1993).  Moreover, "the decision to hold a hearing rests within the sound discretion of the trial court."  Id.  In the instant case, the trial court was well aware of the details of the parties' dispute regarding the Wood computer because Runyan's motion to compel production and Runyan's motion for in camera review involved essentially the same issues.  The only new information relevant to this dispute at the time of the motion for new trial was the defense's post-trial expert analysis of the images contained on the Wood computer.  The district court determined that it could adequately assess the relevance of these two reports without the assistance of an evidentiary hearing.  We cannot conclude that this determination was an abuse of the district court's discretion.

## V.  Runyan's Due Process Claim

Runyan contends that the district court erred in overruling his objection to testimony (solicited by the Government) indicating that Runyan refused to consent to a police search of his desktop computer.  Runyan argues that the Government, in soliciting this testimony, attempted to use Runyan's invocation of his constitutional rights as evidence of guilt, in violation of the due process clause of the Fifth Amendment.  The Government responds that the district court's admission of this testimony

42

was not erroneous because Runyan "invited" this testimony by suggesting: (1) that he had willingly consented to other searches; (2) that Agent Nuckles performed an inadequate investigation; and (3) that the desktop computer was tampered with while Runyan was out-of-town on business.  The Government further contends that, even if the district court acted erroneously in overruling Runyan's objection, this testimony had no effect on the outcome of the proceedings.

This court ordinarily analyzes due process claims alleging improper comment on a defendant's invocation of constitutional rights under the harmless error doctrine, determining whether the improper comment was harmless beyond a reasonable doubt.  See, e.g., United States v. Moreno, 185 F.3d 465, 472 (5th Cir. 1999) (improper comment on a defendant's invocation of his right to counsel); Richardson v. Lucas, 741 F.2d 753, 755 (5th Cir. 1984) (improper comment on a defendant's refusal to testify).  In the instant case, the Government contends that Runyan did not raise this constitutional objection to Agent Nuckles's testimony at trial and that plain error analysis is therefore applicable.  In support of this contention, the Government points out that Runyan's counsel objected to this testimony at the time it was presented only on the ground that it was hearsay.  It appears from the record, however, that Runyan's counsel attempted to object to this line of questioning on constitutional grounds prior to the time that the testimony was elicited, and that the

43

trial court indicated the court would not be receptive to such an objection. Nonetheless, we need not decide whether this objection was properly raised at trial because even under the more defendant-friendly "harmless error" standard, Runyan fails to demonstrate that admission of Agent Nuckles's testimony constitutes reversible error.

This circuit has not directly addressed the question whether a prosecutor commits constitutional error by invoking a defendant's refusal to consent to a warrantless search to support an inference of guilt. However, the circuit courts that have directly addressed this question have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt. See, e.g., United States v. Moreno, 233 F.3d 937, 940-41 (7th Cir. 2000); United States v. Dozal, 173 F.3d 787, 794 (10th Cir. 1999); United States v. Thame, 846 F.2d 200, 205-08 (3d Cir. 1988); United States v. Prescott, 581 F.2d 1343, 1351-52 (9th Cir. 1978); but cf. United States v. McNatt, 931 F.2d 251, 256-57 (4th Cir. 1991) (questioning whether a defendant's invocation of his or her Fourth Amendment rights by refusing to consent to a warrantless search is the constitutional equivalent of a defendant's invocation of his or her right to remain silent under the Fifth Amendment, but not reaching the issue). For the purposes of this appeal, we assume without deciding that it would be error of constitutional magnitude for a trial court to permit a prosecutor

44

to comment on (or present testimony regarding) a defendant's refusal to consent to a warrantless search to support an inference of guilt.[18]  Nonetheless, we find that under the circumstances of this case, this error was harmless.

Runyan's refusal to consent to a police search of his desktop computer arose only once during the course of Agent Nuckles's testimony.  The jury heard the following exchange:

> Q:  Were you aware during your investigation in this case that prior to the execution of the search warrant of the desktop computer, that this defendant was asked for consent to search it?
> A:  Yes, I was.
> . . .
> Q:  Did this defendant give consent for law enforcement to search the desktop computer?
> A:  No, he did not.
> Q:  However, he did give consent to search other places, correct?
> A:  Yes, he did.

The line of questioning then shifted to other matters.  The prosecution neither commented on Runyan's refusal to consent to a warrantless search, nor asked the jury to draw any inferences

---

[18]     We note that reference to a defendant's refusal to consent to a warrantless search may be admissible for purposes other than to support an inference of guilt.  See, e.g., Dozal, 173 F.3d at 794 (finding such evidence admissible to establish the defendant's dominion and control over the property subject to the search).  At least one court has also held that such testimony may be admissible under certain circumstances if "invited" by the defendant's trial strategy.  See McNatt, 931 F.2d at 256-58 (finding that testimony regarding the defendant's refusal to consent to a search of his vehicle was "invited" by his suggestion at trial that the arresting officer "framed" him by planting drugs in the defendant's truck).

from this refusal. Indeed, Runyan's refusal to consent to the search was not mentioned at any other time during the trial. Thus, the record reveals that the offending statement was merely an isolated reference and that Government did not focus on or highlight Runyan's refusal to consent to the search. This suggests that the error was harmless. Cf. United States v. Griffith, 118 F.3d 318, 325 (5th Cir. 1997) (recognizing that two of the relevant factors in assessing whether a prosecutor's comment on a defendant's failure to testify can be harmless error are: (1) whether the comment was an isolated incident and (2) whether the prosecution "focused on" or "highlighted" the refusal to testify) (citing United States v. Shaw, 701 F.2d 367, 383 (5th Cir. 1983)).

Moreover, the evidence supporting Runyan's conviction for possession and receipt of child pornography is very strong. Images of child pornography (often images of the same children or even identical images) were found on Runyan's desktop computer, on the disks removed from the ranch by Judith, and on a backup disk found during the warrant-authorized search of Runyan's home. In addition, evidence of previous access to child pornography websites was found on Runyan's desktop computer and on a laptop computer that Runyan previously owned that he gave to his stepdaughter, Rickie, when she started college. Strong evidence of guilt can render the admission of evidence regarding a defendant's refusal to consent to a warrantless search

46

"harmless." See Moreno, 233 F.3d at 941; McNatt, 931 F.2d at 258; cf. United States v. Valley, 928 F.2d 130, 135 (5th Cir. 1991) (finding that overwhelming evidence of guilt can render "harmless" a prosecutor's comment on the defendant's refusal to testify). Under these circumstances, we can safely say that it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty even if the Government had never asked Agent Nuckles about Runyan's refusal to consent to a police search of his desktop computer. See McNatt, 931 F.2d at 258. Because we find that the alleged constitutional error "did not contribute to the verdict obtained," this error was harmless and the jury's verdict should be upheld. Valley, 928 F.2d at 135 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

## VI. Runyan's Sentencing Claim

Runyan's final claim of error alleges that he was incorrectly sentenced. The district court grouped three of Runyan's four counts of conviction. Count one (sexual exploitation of a child) was considered by itself, while the three remaining counts (receipt, distribution, and possession of child pornography) were grouped together. In the sentence calculation for the group of offenses, Runyan received a five-level enhancement for "engag[ing] in a pattern of activity involving . . . sexual exploitation of a minor." Accordingly, Runyan contends that his exploitation offense was, in effect, "double counted." Such "double counting" is contrary to Section

47

3D1.2(c) of the Sentencing Guidelines, which provides that counts of conviction should be grouped "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S. Sentencing Guidelines Manual § 3D1.2(c) (1998).

This "double counting" increased Runyan's sentence. As determined in the presentence report ("PSR"),[19] the adjusted offense level for sexual exploitation of a minor was 33. The adjusted offense level for the grouped offenses (receipt, distribution, and possession of child pornography) was 37. Pursuant to Section 3D1.3(a), this group offense level was calculated based on the distribution charge, the most serious of the three counts comprising this group.[20]

Because Runyan was convicted of multiple counts that were grouped separately, the PSR calculated Runyan's combined offense level under Section 3D1.4. See id. § 3D1.4. Pursuant to the formula provided in this section, the greater of Runyan's offense levels (i.e., 37) was increased by two for a combined offense

---

[19]    The district court adopted the factual findings and guideline application from the PSR.

[20]    Section 3D1.3(a) reads: "In the case of counts grouped together pursuant to §3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." U.S. Sentencing Guidelines Manual § 3D1.3(a) (1998).

level of 39.  This offense level resulted in a total punishment range of 262-327 months.  Had the counts of conviction been properly grouped by the district court into a single group, this two-level increase under Section 3D1.4 would not have applied. Thus, Runyan's offense level would have been 37, corresponding to a total punishment range of 210-262 months.

In addition, because the total punishment range that was calculated based on the combined offense level of 39 (i.e., 262-327 months) exceeded the statutory maximum for any of the counts involved, the district court imposed Runyan's sentences consecutively rather than concurrently, pursuant to Section 5G1.2(d), to achieve the total sentence of 300 months.[21]  Had all four counts of conviction been grouped together, the sentence on the count carrying the highest statutory maximum, (i.e., sexual exploitation of a child, which carries a statutory maximum of 240 months) would have been adequate to achieve the total punishment range for an offense level of 37 (i.e., 210-262 months). Accordingly, Runyan's sentences for his other counts of conviction would have run concurrently with the sentence for

---

[21]     Section 5G1.2(d) reads: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."  U.S. Sentencing Guidelines Manual § 5G1.2(d) (1998).

49

sexual exploitation, rather than consecutively, pursuant to Section 5G1.2(c).[22]

Thus, because the district court's improper grouping of the counts of conviction affects Runyan's substantial rights, he is entitled to resentencing. We note that resentencing is needed not only to correct this improper grouping determination but also to account for this court's reversal of Runyan's conviction for distribution of child pornography. Accordingly, we remand to the district court for resentencing consistent with this opinion.

## VII. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Runyan's motion for a new trial (No. 01-11207). In Runyan's direct appeal of his conviction (No. 00-10821), we AFFIRM Runyan's convictions for sexual exploitation of a child, receipt of child pornography, and possession of child pornography. However, we REVERSE Runyan's conviction for distribution of child pornography and VACATE Runyan's sentence. Accordingly, we REMAND action No. 00-10821 to the district court for entry of judgment and resentencing consistent with this opinion.

---

[22] Section 5G1.2(c) reads: "If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law." U.S. Sentencing Guidelines Manual § 5G1.2(c) (1998).

50