In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00217-CR


______________________________




CLAYTON TAYLOR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Red River County, Texas


Trial Court No. 102-CR-12-00




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Clayton Taylor appeals his conviction for possession of child pornography in the
form of individual photographs allegedly found on the hard drive of his computer. He was
tried in a single trial on ten separate counts. A jury found him not guilty on count one and
guilty on counts two through ten. Each separate count alleged he was in possession of
one specific photograph. (1) The court assessed his punishment at nine years' imprisonment.

 Taylor contends that the trial court erred by denying his motion to transfer venue,
that the State failed to produce critical exculpatory evidence which had been ordered
produced by the trial court, that the State failed to provide copies of material physical
evidence for defense inspection, and that trial counsel's failure to object to inadmissible
hearsay deprived him of constitutionally-required effective assistance of counsel. Taylor
also contends the trial court's admission of hearsay not subject to a recognized exception
deprived him of his right of confrontation, as guaranteed by the Sixth Amendment to the
United States Constitution, and that its admission of "highly prejudicial" extraneous "bad
acts" violated Rules 403 and 404 of the Texas Rules of Evidence. Taylor finally contends
that the trial court erroneously refused to admit a book into evidence and generally argues
that "pervasive prosecutorial misconduct" and errors by the trial court as set out above
deprived him of both substantive and procedural due process. 

 Taylor was indicted on the complaint of Mike Marshall, Chief Investigator of the
Attorney General's Internet Bureau, as part of continuing investigations about the sale of
child pornography over the internet. (2) The evidence shows Taylor was made the target of
an investigation because his name was found in the records of Landslide Corporation, a
business that had provided credit card verification for pornography websites. Landslide
had been the target of a child pornography investigation, and its principals had been
prosecuted and convicted for their involvement in child pornography. The State did not
allege or prove the pictures the subject of this prosecution were purchased through Taylor's
Landslide activities, and it appears Taylor's activities through Landslide ceased over a year
before the warrant was issued in this case.

 Marshall was the State's primary witness. His investigation of Taylor began in
October 2000 based on the discovery of Taylor's name in the Landslide database. Taylor
was a high school band director, employed in Red River County. Marshall and deputies
from the Red River County Sheriff's Department commenced their investigation of Taylor,
at Taylor's home, on his return from an out-of-town band competition trip. When
confronted with questions about his internet usage, Taylor appeared to Marshall to be in
a nervous, excited state. 

 Marshall testified that Taylor, after being given Miranda (3) warnings, acknowledged
accessing and downloading internet pictures of children under the age of seventeen years
engaging in sex, as well as stories describing sexual activities between adults and
children. (4) Marshall described Taylor as being at all times cooperative with investigators
and speaking freely about his activities.

 Taylor provided to officers a hand-written statement, which was read to the jury. (5) 
Taylor told the investigators he had been downloading this material for the last twenty
months, but denied ever having any inappropriate contact with children. Taylor told the
officers he was undergoing counseling for his behavior.


Motion to Transfer Venue

 Taylor filed a motion to transfer venue August 20, 2001. His motion was based on
his allegation that articles appearing in the Paris News, the latest of which appeared
August 17, 2001, caused undue pretrial prejudice to him. The August 17 article set out not
only the allegations of the charges against him, but also described all of the extraneous
acts and materials the State intended to introduce into evidence. The article also
described allegations of inappropriate contact (kissing) with a student, (6) as well as types of
allegedly pornographic photographs that were the subject of the two counts of the
indictment that were severed. (7) Attached to Taylor's motion, along with a copy of the
newspaper article, were the affidavits of Taylor and two additional persons, Jeana Smith
and Vickie Bryant, residents of Red River County, who stated under oath that, because of
the existing knowledge of the case by members of the community, and because of the
newspaper article, Taylor would be unable to get a fair trial in the county. The State filed
no controverting affidavits. 

 On the day of trial, August 20, 2001, but before voir dire of the jury panel, the court
conducted a hearing on Taylor's motion. At the hearing, Taylor called three witnesses: 
Jack Herrington, a former county and district attorney of Red River County, as well as
Bryant and Smith, affiants, who testified Taylor could not get a fair trial in Red River
County. Bryant and Smith testified-and stated in their affidavits-that the community was
prejudiced against Taylor, that they (the community) wanted to "hang the sucker." 
Although the State presented no controverting affidavits or evidence, the trial court
nevertheless carried the motion through the jury selection process. After the completion
of voir dire and the selection of a jury, the trial court denied the motion. 

 A trial court may grant a change of venue on the written motion of the defendant in
any felony or misdemeanor case punishable by confinement. The motion must be
supported by the defendant's own affidavit and the affidavits of two credible persons,
residents of the county of prosecution, stating that there exists in the county of prosecution
"so great a prejudice against him that he cannot obtain a fair and impartial trial." Tex.
Code Crim. Proc. Ann. art. 31.03 (a)(1) (Vernon 1989). The credibility of the persons
making the affidavits, or their means of knowledge, may be attacked by the affidavit of a
credible person, which forms a factual issue to be determined by the trial court. Tex. Code
Crim. Proc. Ann. art. 31.04 (Vernon 1989). 

 A defendant's proper motion to change venue entitles such defendant to a change
of venue as a matter of law unless the State files controverting affidavits. Lundstrom v.
State, 742 S.W.2d 279, 281-82 (Tex. Crim. App. 1986). The reason for this rule is that "in
the absence of controverting evidence, there is no issue of fact to be resolved." Id. at 282,
quoting McManus v. State, 591 S.W.2d 505, 516 (Tex. Crim. App. 1980). However, this
right is waived by the defendant if he or she participates in a hearing on the merits of the
motion and allows the state to put on evidence in such hearing, consequently rendering the
issue one of fact for determination by the trial court. Id.; Cooks v. State, 844 S.W.2d 697,
730 (Tex. Crim. App. 1992). 

 In Cooks, the court held that the appellant waived his right to a change of venue as
a matter of law by participating in hearings on the merits of the motion and allowing the
state to put on evidence, without objection, controverting the appellant's motion, because
when the issue was joined by the introduction of such evidence, a fact issue was then
raised which required a decision by the trial court. Cooks, 844 S.W.2d at 730; see
Stapleton v. State, 565 S.W.2d 532 (Tex. Crim. App. [Panel Op.] 1978). 

 The presentation of an application for change of venue, properly verified,
makes it incumbent upon the trial judge to change the venue, unless the
application is controverted in the manner prescribed by statute, or unless the
controverting affidavit is waived by the accused, and evidence heard
justifying the denial of the motion. 


Stapleton, 565 S.W.2d at 533-34, quoting Cox v. State, 90 Tex. Crim. 106, 234 S.W. 72,
73 (1921); see Cooks, 844 S.W.2d at 730.

 In this case, the State did not file any counteraffidavits. At that point, Taylor was
entitled as a matter of law to his change in venue. However, a hearing was then conducted
on the venue issue without objection and the motion carried pending the completion of voir
dire. The State argues that, by failing to object and by his participating in this hearing,
Taylor waived his right, as a matter of law, to the change in venue. 

 The Texas Court of Criminal Appeals described in Lundstrom the circumstances
under which a defendant in this situation waives this right:

 The defendant waives this right if he participates in a hearing on the
motion when the State has filed no controverting affidavits . . . . "Where the
defendant . . . allows the trial court to hear the merits of the issue and to thus
exercise its discretion in determining the issue of fact, he cannot thereafter
argue that no issue of fact was raised and that he was entitled to the change
as a matter of law." [Quoting from McManus, 591 S.W.2d 505.] Therefore
if the defendant, though entitled to a change of venue as a matter of law,
nevertheless puts on evidence concerning the reasons for the change of
venue, and allows the State to do so, the issue then becomes one of fact for
the trial court to determine. 


Lundstrom, 742 S.W.2d at 282 (emphasis added) (citations omitted).


 Although Taylor put on evidence concerning the reasons for the change of venue
when the State had filed no controverting affidavits, the State failed to put on any evidence
of any sort at the hearing. In the absence of controverting evidence, there is no issue of
fact to be resolved. Id. Further, the cross-examination of Taylor's witnesses by the State
showed nothing more than that the witnesses did not know the people on the jury panel
or their individual ability to act fairly. This does not raise a fact issue on a venue
determination. The fact that Taylor's witnesses were unable to testify on cross-examination that any of the veniremembers had any personal knowledge or preconceived
notions as to the case was not relevant. There is no authority to suggest that a defendant's
witnesses in a venue challenge must be able to address the ability of the individual
members of the venire to provide a fair trial, and we believe such a requirement would be
impossible to meet. 

 Because the issue had not been joined at the conclusion of the venue hearing, we
cannot say Taylor waived his right to the change of venue as a matter of law. We further
hold that, under the circumstances of this case, the trial court erred in withholding its
decision on the motion until completion of voir dire. 

 In Henley v. State, 576 S.W.2d 66, 71 (Tex. Crim. App. 1978), the Texas Court of
Criminal Appeals held that the trial court is not precluded from utilizing voir dire to help
gauge the community attitudes and opinions concerning a defendant. See Foster v. State,
779 S.W.2d 845, 852 (Tex. Crim. App. 1989). However, in reaching its decision in Henley,
the court quoted from Randle v. State, 34 Tex. Crim. 43, 28 S.W. 953 (1894), that "[t]he
prejudice in the county may be such that jurors will qualify themselves who are not
impartial," and noted that, "regardless of the successful qualification of a jury panel, the
evidence adduced during the pretrial hearing on the venue motion may dictate that a
change of venue be granted in order to assure the accused a fair and impartial trial."
Henley, 576 S.W.2d at 71 (emphasis added). The court further cautioned against using
the successful qualification of a jury panel as the sole criterion in determining whether a
defendant is entitled to a change of venue and concluded that:

 Appellant was entitled to a change of venue if he could show, even
though it would be possible to select a jury whose members were not subject
to a challenge for cause, that there were influences in the community which
could affect the answers on voir dire, or the testimony of witnesses at trial or
that for any other reason a fair and impartial trial could not be had in Bexar
County. 


Id. at 72 (emphasis added).


 It is apparent from the record that the trial court based its denial of Taylor's motion
solely on the successful qualification of a jury panel. This failed to comport with statutory
procedure. See Silva v. State, 64 S.W.3d 430, 433 (Tex. App.-San Antonio 2001, no
pet. h.) (holding when issue as to propriety of venue is raised under Articles 31.03 and
31.04, it is to be resolved only after pretrial evidentiary hearing, and that failure to do so is
error).

 In the instant case, the only evidence the trial court heard at the hearing on Taylor's
motion dictated that a change of venue be granted. The qualification of a jury panel was
the sole criterion in determining Taylor was not entitled to a change of venue. However,
because the State filed no controverting affidavits and presented no evidence at the
hearing, Taylor remained entitled to a change of venue as a matter of law, no matter what
the veniremembers said during voir dire. Lundstrom, 742 S.W.2d at 284. The selection
of an unbiased jury is insufficient to satisfy the state's burden to join issue with a motion
for change of venue. Fields v. State, 627 S.W.2d 714, 719 (Tex. Crim. App. 1982). At the
end of voir dire, the State still had not attacked the credibility of the persons making the
affidavits attached to Taylor's motion, or their means of knowledge. As such, Taylor was
entitled to a change of venue as a matter of law and it was error for the trial court to deny
his motion. 

 Taylor's right to a fair trial by an impartial jury is of constitutional dimension, and the
question of change of venue certainly implicated his constitutional rights. See Adami v.
State, 524 S.W.2d 693, 703 (Tex. Crim. App. 1975); Silva, 64 S.W.3d at 433. If the
appellate record in a criminal case reveals constitutional error that is subject to the
harmless error review, we must reverse a judgment of conviction or punishment unless we
determine beyond a reasonable doubt that the error did not contribute to the conviction or
punishment. Tex. R. App. P. 44.2(a). 

 The record on appeal reveals that, in the words of the court, "numerous" jurors were
excused for cause, that Taylor used all ten of his strikes, and that the State cut its
peremptory strikes from ten to six in order to be able to empanel a jury from the venire. 
The record of the voir dire indicates most members of the empaneled jury knew Taylor and
had knowledge of his alleged crimes from various sources, including conversations with
neighbors and publicity in newspaper reports. 

 We also recognize the reality that jury selection for a shocking trial of a local
schoolteacher, for possession of child pornography, in a rural community, raises
substantial problems in jury selection that are not present in a large, metropolitan area with
a large population and the concomitantly larger and more diverse (and uninformed) jury
pool.

 We have also reviewed the voir dire. It reflects the expected mix of individuals
admitting knowledge and predetermined notions about the outcome of the trial, as well as
knowledge of the publicity the trial had already received. Under these facts as shown by
the record, we cannot conclude beyond a reasonable doubt the error did not contribute
either to conviction or punishment. 

Brady Violations

 Taylor next contends the prosecutor failed to disclose exculpatory evidence material
to the defense. He contends that: 1) Marshall's handling of the copy of the information on
Taylor's hard drive, the key physical evidence in the case, was defective, and that Taylor's
hard drive was copied to a "contaminated" hard drive from the Internet Bureau's child
pornography general files, which may have already contained pornographic data; and 2)
the State failed to provide the defense with a copy of Taylor's hard drive and a copy of the
hard drive to which Taylor's hard drive was copied.

 Before trial, the trial court issued its standard discovery order requiring the State to
produce to the defense all physical evidence that would be offered at trial and explicitly
required that all exculpatory evidence known to the prosecutor be produced in accordance
with the Brady rule. See Brady v. Maryland, 373 U.S. 83 (1963).

 The Due Process Clause of the Fourteenth Amendment to the United States
Constitution is violated when a prosecutor fails to disclose evidence favorable to the
accused that creates a probability sufficient to undermine confidence in the outcome of the
proceeding. Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). (8) In order to
establish a due process violation under Brady, a defendant must show: 1) evidence was
suppressed; 2) the suppressed evidence was favorable to the defense; and 3) the
suppressed evidence was material to either guilt or punishment. United States v. Runyan,
290 F.3d 223, 245 (5th Cir. 2002); Thomas, 841 S.W.2d at 404; Buckley v. State, 46
S.W.3d 333, 339 (Tex. App.-Texarkana 2001, pet. dism'd, untimely filed). Favorable
evidence includes both exculpatory and impeachment evidence. Thomas, 841 S.W.2d at
404.

 The second requirement of Brady is certainly present. The testimony clearly shows
that Marshall made several errors in following required procedure for copying the subject
hard drive to a "forensic" hard drive, and also that he did so without "wiping" the disk onto
which the material was copied (an in-house disk used in pornography investigations). 
Marshall admitted that the drive was one used in-house for pornography investigations and
that it could have already contained pornographic material. This was certainly at least
impeachment evidence favoring the defense. 

 However, the State contends the first required element of Brady is missing because
Taylor failed to show the information was "suppressed." This first element of Brady is
present if the prosecution actively suppresses evidence or negligently fails to disclose it. 
Baker v. State, 887 S.W.2d 227, 228 (Tex. App.-Texarkana 1994, no pet.). 

 In Runyan, a child pornography case, the appellant contended the government had
violated Brady by denying him access to a computer owned by a defense witness in the
case, which would have allegedly contained exculpatory information. The Fifth Circuit
found no Brady violation; the computer was available at trial, and the defense had full
access to the computer and its contents during trial. The government is not required to
facilitate the compilation of exculpatory material that could have been compiled by the
defense. Thus, without suppression, there was no Brady violation. Runyan, 290 F.3d at
244, 245-46. There is no Brady violation if it is not shown that the defendant was denied
access to the allegedly favorable material. Staten v. State, 919 S.W.2d 493, 498 (Tex.
App.-Fort Worth 1996, pet. ref'd). If the defense has the opportunity to cross-examine
concerning the allegedly exculpatory material and there is no showing the defense would
have pursued a different trial strategy if he or she had known this information sooner, no
Brady violation is shown. Williams v. State, 995 S.W.2d 754, 761-62 (Tex.
App.-San Antonio 1999, no pet.). Further, the prosecutor is not required to furnish the
defendant with exculpatory and mitigating evidence which is equally and fully accessible
to the defense. Flores v. State, 940 S.W.2d 189, 191 (Tex. App.-San Antonio 1996, no
pet.). 

 The record shows that the EnCase report, from which Taylor's expert was able to
determine error had been made, was furnished to defense counsel five days before the
date testimony commenced. In its opening statement, the State acknowledged errors had
been made. Marshall admitted on direct examination he had made mistakes transferring
the data from Taylor's computer. Specifically, before copying the drive, Marshall executed
a format command against Taylor's drive, when he should have formatted the target drive. 
By doing so, he destroyed the file allocation table for Taylor's computer and there was no
structure in place for the files which were copied. Defense counsel extensively cross-examined Marshall about his errors. 

 However, the record contains a report from John Hinds, an analyst who assisted
Marshall. The report pointed out these errors in detail. That report was produced four
months before trial. Thus, Taylor was made aware at an appropriate time of the critical
mistakes made by Marshall in his attempt to copy the contents of the hard drive, and no
Brady violation is evident.

 That is not, however, the conclusion of Taylor's argument, but is instead its
beginning. Taylor complains strenuously because he was never informed Marshall had
copied the hard drive (without the file structure), not onto a clean or newly-wiped hard
drive, but instead onto a hard drive the State had used in previous pornography
investigations-and which the State admitted could therefore have contained images from
previous investigations. 

 The State has no response to this contention, except to argue in a single sentence
that the matter was fully explored at trial. The State cites Runyan, 290 F.3d 223, for the
proposition that, if information is fully available at the time of trial, then a Brady violation is
not shown. That argument ignores the second facet of that proposition: that the only
reason for not obtaining the evidence is defense counsel's lack of reasonable diligence. 
It is clear the State informed Taylor about the problems with the file transfer. It is equally
clear the State did not inform Taylor about its failure to wipe the target disk and the
resultant possibility that extraneous photographs could be on the target disk. 

 After this fact became apparent at trial, counsel elicited evidence about whether
extant files on the hard drive could be clearly differentiated from files added by the copying
process. That evidence is conflicting. The testimony seems to agree that, if the officers
had not initially made the mistake of formatting Taylor's drive and destroying the file
allocation structure before copying the drive, it would be clear which portions of the copied
files came from Taylor's machine. However, because in this case the State destroyed the
file allocation structure, the testimony indicates there is a probability that any given file
might have already been on the disk before the copying process occurred. 

 The errors in copying were disclosed in a timely fashion, and Brady is not implicated
as to that matter standing alone. However, the error in failing to first wipe the target disk
was not revealed, and that knowledge is critical to any analysis of the importance of the
errors in copying, as well as to any attempt to determine whether the photographs were on
Taylor's hard drive, or were left over from prior pornography prosecutions.

 The entirety of the conviction is based on those photographs. Brady requires a
showing that the evidence was suppressed, that the suppressed evidence was favorable
to the defense and material to either guilt or punishment-and creates a probability
sufficient to undermine confidence in the outcome of the proceeding.

 The evidence was clearly suppressed. The first prong has been met. The second
prong requires a showing the evidence was favorable. Favorable evidence is any evidence
that "if disclosed and used effectively, it may make the difference between conviction and
acquittal." United States v. Bagley, 473 U.S. 667, 676 (1985). Favorable evidence
includes both exculpatory and impeachment evidence. The nondisclosed evidence tends
to impeach the testimony of the expert witness on whom the State relied to convict and is
thus exculpatory in nature. Exculpatory evidence is evidence which tends to justify,
excuse, or clear the defendant from alleged fault or guilt. Thomas, 841 S.W.2d at 404. 
Impeachment evidence is that evidence offered "to dispute, disparage, deny, or contradict
. . . ." Id., quoting Black's Law Dictionary 566 (5th ed. 1990). Further, this evidence goes
to a matter the State was required to prove: that the pictures were actually on Taylor's
computer drive. If disclosed and used effectively, proof that they were not on his computer
would necessarily have resulted in an acquittal. Therefore, the evidence was favorable,
and the second part of the test has been satisfied.

 The third prong of the test requires us to determine whether the evidence was
material, i.e., created a probability sufficient to undermine confidence in the outcome of the
proceeding. To make this determination, we must examine the alleged error in the context
of the entire record. Id.; see Bagley, 473 U.S. at 683; see also United States v. Agurs, 427
U.S. 97, 113 (1976).

 We are required to examine the error in context of the overall strength of the State's
case. See Thomas, 841 S.W.2d at 405. The Thomas court referred to the analysis used
by the United States Supreme Court in Agurs to supply the form of that analysis. The
Agurs opinion states:

 If . . . one of only two eyewitnesses to a crime had told the prosecutor that
the defendant was definitely not its perpetrator and if this statement was not
disclosed to the defense, no court would hesitate to reverse a conviction
resting on the testimony of the other eyewitness. But if there were fifty
eyewitnesses, forty-nine of whom identified the defendant, and the
prosecutor neglected to reveal that the other, who was without his badly
needed glasses on the misty evening of the crime, had said that the criminal
looked something like the defendant but he could not be sure as he had only
had a brief glimpse, the result might well be different. 


Agurs, 427 U.S. at 113.

 Therefore, a verdict that is only weakly supported by the record is more likely to be
affected by the prosecutorial error than a verdict which is strongly supported. Strickland
v. Washington, 466 U.S. 668, 696 (1984).


 Further, 

 the reviewing court may consider directly any adverse effect that the
prosecutor's [nondisclosure] might have had on the preparation or
presentation of the defendant's case. The reviewing court should assess the
possibility that such effect might have occurred in light of the totality of the
circumstances and with an awareness of the difficulty of reconstructing in a
post-trial proceeding the course that the defense and the trial would have
taken had the defense not been misled by the prosecutor's [failure to
disclose].

 

Bagley, 473 U.S. at 683.

 With this in mind, we recognize that the State relied exclusively on the photographic
images obtained from the copying process to implicate Taylor as the possessor of those
photographs. Although Taylor provided a statement saying he had at times viewed and
downloaded photographs on the internet, he was not convicted of generally viewing or
purchasing photographs, whether lewd or otherwise. He was convicted of possessing nine
specific photographs. There is no other evidence to show these photographs were actually
contained on his computer. The State's case, therefore, rested on those photographs
exclusively and on the credibility of the witness who copied Taylor's computer drive that
allegedly contained those photographs. This evidence, which tends both to exculpate
Taylor and to impeach the State's witness' testimony, went to the very heart of the State's
case and involves the only means used to present that evidence. (9) 

 Despite the problems set out above and the untimely exposure of those problems
to counsel, as well as the obvious expense of proceeding to the brink of trial and then
stopping to regroup, and the expense to the defendant of bringing an expert witness in for
trial, courts have held there is yet another way that complaints about Brady violations may
come to naught. Long-standing caselaw indicates that, when previously withheld evidence
is disclosed at trial, the defendant has an opportunity to request a continuance. Williams,
995 S.W.2d at 762; Losoya v. State, 636 S.W.2d 566, 571 (Tex. App.-San Antonio 1982,
no pet.). The failure to request a continuance waives any Brady violation, as well as any
violation of a discovery order. Williams, 995 S.W.2d at 762; see Lindley v. State, 635
S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982); Yates v. State, 941 S.W.2d 357, 364
(Tex. App.-Waco 1997, pet. ref'd); Losoya, 636 S.W.2d at 571. 

 This reasoning is taken from Texas Court of Criminal Appeals cases which used that
reasoning in the context of police reports or favorable witness statements, which are an
express exception to the discovery rule. Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon
Supp. 2002). (10) Since that time, they have been applied to any situation where surprise is
claimed, without consideration of other factors that show the basic unfairness of allowing
the state to take a case to trial without revealing basic exculpatory evidence. This case
highlights those factors. Most notably, Taylor was not indigent, and the State was not
paying for his defense or for his expert witness. Further, the State does not suggest it was
unaware of the evidence, but claims instead it thought it was not of importance and chose
not to provide it to the defense.

 Nevertheless, we are confronted with the basic fact that counsel did not, when he
was finally informed of the evidence, ask the trial court for a continuance. Under the
authority cited above, we have no choice but to find the Brady claims were waived.

Discovery Error

 Taylor also contends the trial court's refusal to order the State to provide him with
a complete copy of the hard drive as "material physical evidence" for inspection requires
reversal. The State took the position that the electronic images were pornographic, and
thus contraband, and that it could not therefore provide him with a complete copy of the
hard drive which included the copies. Mere inspection of the images or even of the
EnCase report is not the same as an inspection of the drive itself (or an exact copy
thereof). It is certainly not the same as an independent forensic examination of the
contents of the hard drive by an expert.

 A drug defendant has the right to have an independent chemist review the
"contraband" in the presence of a representative of the state to determine its chemical
makeup. Mendoza v. State, 583 S.W.2d 396, 398 (Tex. Crim. App. [Panel Op.] 1979); see
Tex. Code Crim. Proc. Ann. art. 39.14. It is no different in this instance to require the
State to produce its evidence, i.e., the hard drive, for independent review, subject to the
State's right to have a representative present. Accordingly, at the very least, an exact copy
of the duplicate of Taylor's hard drive should have been produced for review by an expert
of Taylor's choosing, in the presence of a representative of the State.

 In so holding, we disagree with the State's position that such a review must be
conducted at a State-controlled facility. We would not require a chemist to take a "porta-lab" with him or her into an evidence room to check alleged contraband drugs, and it is not
appropriate to require a computer expert to carry his or her equipment into a State facility
to review the documents. Under some circumstances, such as in this case where the
accuracy of the copy itself is at issue, on timely request the duplicate and the original hard
drive should both be produced for independent examination. The failure to produce the
requested materials for independent review by defense counsel or his expert was error.

 If the appellate record in a criminal case reveals nonconstitutional error that is
subject to review under Tex. R. App. P. 44.2(b), we do not reverse a judgment of conviction
or punishment unless we determine the error is such that it affects the substantial rights
of the defendant. In order to properly conduct a harm analysis under Rule 44.2(b), we are
to determine whether the error affected a substantial right of the defendant. The Texas
Court of Criminal Appeals has opined that, in order to make this determination, we must
decide whether the error had a substantial or injurious effect on the jury's verdict. Llamas
v. State, 12 S.W.3d 469, 471 n.2 (Tex. Crim. App. 2000). 

 If concrete data necessary to conduct a harm analysis is absent, we must
nevertheless conduct the test, and the absence of information is simply taken into account
in determining whether the harmless error test was passed or failed. Cain v. State, 947
S.W.2d 262, 264 (Tex. Crim. App. 1997). This means some errors will not be proven
harmless because harm can never be determined due to lack of information needed for
analysis. Llamas, 12 S.W.3d 469.

 In so doing, we must assess harm, but there is no burden on either the appellant
or on the state to demonstrate that harm. Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim.
App. 2001); Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2000). The parties may
suggest how such harm is shown (or not), but no presumptions or allocated burdens of
proof may exist. Johnson, 43 S.W.3d at 4.

 In considering harm, the entire record must be reviewed to determine whether the
error had more than a slight influence on the verdict. See King v. State, 953 S.W.2d 266, 
271 (Tex. Crim. App. 1997), citing Kotteakos v. United States, 328 U.S. 750, 776 (1946);
Reeves v. State, 969 S.W.2d 471, 491 (Tex. App.-Waco 1998, pet. ref'd). If the court finds
the error did have more than a slight influence on the verdict, it must be concluded the
error affected the defendant's substantial rights in such a way as to require a new trial. 
Johnson, 43 S.W.3d at 4; Reeves, 969 S.W.2d at 491. If the court has grave doubts about
the error's affect on the outcome, the case must be remanded for a new trial. Johnson, 43
S.W.3d at 4. Otherwise, the court should disregard the error. Id.; Lopez v. State, 990
S.W.2d 770, 778 (Tex. App.-Austin 1999, no pet.). 

 The contents of the hard drive were necessarily the central issue in this trial. The 
failure to order a copy of the hard drive produced, after request by counsel, had several
results. Most importantly, defense counsel had no opportunity to discover for himself the
errors referenced above. Those errors had the potential to be of critical importance to
Taylor's defense, but without the opportunity to examine those errors in a less haphazard
manner than the "on-the-fly" efforts made on cross-examination, we do not have sufficient
information for more than an analysis of probabilities, rather than facts.

 The failure to provide a copy of the hard drive also meant counsel did not have a
copy of the photographs which the State alleged to be pornographic, which necessarily
impacted his ability to prepare a defense to the claim. 

 Cocaine can be analyzed, and the result conclusively shows whether the substance
is contraband. That is not the case with photographs that may or may not be lewd. That
is most clearly shown by the fact that we must conclude the jury decided one of the
photographs was not pornographic. Counsel should have been provided with the
information requested. 

 We conclude that under these facts this error had a substantial or injurious effect
on the jury's verdict. 


The Story

 Taylor also contends the trial court erred by allowing a "story" found in Taylor's
residence to be admitted into evidence. The "story" was found on a floppy disk at Taylor's
home and is a despicable (and lengthy) sexual narrative extolling the joys of sex enjoyed
by men and women with both willing and unwilling young girls. It is extremely graphic and
provides detailed descriptions of an infinite variety of sexual activity. 

 Counsel objected strenuously when the evidence was introduced, initially because
the story was not relevant in any respect to a prosecution for possession of photographs,
and then further argued the story was "highly prejudicial" with no purpose other than to
"inflame the jury." The State, in its response to the objection, addressed both the
relevancy argument and counsel's argument about undue prejudice.

 On appeal, the State argues the prejudice versus probative value argument was not
preserved for review because counsel did not refer the court to Tex. R. Evid. 403. It is not
necessary for counsel to specify the rule under which he is complaining, but only to so
frame his objection so that it may be clearly understood by the trial court. See Anderson
v. State, 817 S.W.2d 69, 73 n.4 (Tex. Crim. App. 1991). An objection is sufficient to
preserve error for appellate review if the objection communicates to the trial court what the
objecting party wants, why the objecting party thinks himself or herself entitled to relief, and
does so in a manner clear enough for the court to understand the objection and request
at a time when the court is in a position to do something about it. See Lankston v. State,
827 S.W.2d 907, 908-09 (Tex. Crim. App. 1992). 

 It is clear, both from counsel's argument and from the court's statements, that the
objection was understood on both grounds. The complaint was therefore preserved for
appellate review. 

 The first question is whether the story was relevant to this prosecution. Tex. R. Evid.
401 provides that relevant evidence is "evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence."

 This is limited by Rule 404, which provides that evidence of other acts is not
admissible to prove a person's character in order to show that he or she acted in
conformity with his or her character. See Tex. R. Evid. 404. The purpose of the rule is to
avoid tempting a jury to convict a person for being a "bad person" generally and to require
conviction on the particular alleged offense. The built-in exception provides that the
evidence is nevertheless admissible if it is relevant for some other purpose, such as to
show motive, knowledge, intent, etc.

 The State contends the story is relevant to show knowledge by Taylor that the
pictures were on his hard drive and that they were not there by accident; and that it makes
it less likely that possession of the photographs was an accident when the person was also
downloading narratives that involved sexual contact between adults and minors, citing
United States v. Grimes, 244 F.3d 375 (5th Cir. 2001). Both Taylor and the State refer to
Grimes as supportive of their position. 

 In Grimes, a child pornography case, the Fifth Circuit found that a similar story found
in a computer was admissible as relevant to show that Grimes knew the photographs were
of minors, that he knowingly possessed the images, that it was Grimes instead of another
family member who possessed the photographs, and that the possession was likely not an
accident when the person was also downloading narratives involving sexual contact
between adults and minors. Id. at 384 n.18.

 The points similar in this case to Grimes are the "accident" and "knowledge"
considerations. As in Grimes, the story certainly supports those two matters, and thus the
court correctly concluded it was relevant and admissible for reasons other than to show
Taylor was acting in conformity with his character.

 At this juncture, however, the State urges this Court to abandon Grimes, because
the Fifth Circuit then reviewed the story and concluded unequivocally it was unduly
prejudicial and inadmissible. It described the narratives as vile in their graphic and violent
nature, and concluded the probative value was substantially outweighed by the danger of
unfair prejudice. 

 We now turn to the question of whether this evidence was inadmissible because it
is evidence of such a nature that its probative value was substantially outweighed by the
danger of unfair prejudice. See Tex. R. Evid. 403. This objection requires the trial court
to engage in a balancing process, that is, to weigh the probative value of the evidence
against its tendency to suggest a decision on an improper basis. Appellate review is on
an abuse of discretion standard. Rule 403 carries with it a presumption that the evidence
will be more probative than prejudicial. Tennison v. State, 969 S.W.2d 578, 580 (Tex.
App.-Texarkana 1998, no pet.). In order to be unfairly prejudicial, the proffered evidence
must have a tendency to suggest a decision on an improper basis. Perkins v. State, 902
S.W.2d 88, 99 (Tex. App.-El Paso), supplemented by, 905 S.W.2d 452 (Tex.
App.-El Paso 1995, pet. ref'd).

 In conducting the balancing test required by Rule 403, the trial court must assess
the inherent tendency, if any, of the evidence to encourage resolution of material issues
on an improper basis, and then must balance against that inherent tendency the host of
factors affecting probativeness. Richardson v. State, 879 S.W.2d 874, 880-81 (Tex. Crim.
App. 1993); Fuller v. State, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992). An appellate
court reviewing the trial court's decision may reverse it only for an abuse of discretion, i.e.,
only when the trial court's decision was outside the zone of reasonable disagreement. 
Richardson, 879 S.W.2d at 881; Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1990) (op. on reh'g).

 Those criteria include the following factors: (1) how compellingly the evidence
serves to make a fact of consequence more or less probable-a factor that is related to the
strength of the evidence; (2) the potential the evidence has to impress the jury in some
irrational but nevertheless indelible way; (3) the time the proponent will need to develop the
evidence; and (4) the force of the proponent's need for this evidence to prove a fact of
consequence, which breaks down into three subparts: (a) Does the proponent have other
available evidence to establish the fact of consequence that the evidence is relevant to
show? (b) How strong is that other evidence? and (c) Is the fact of consequence related
to an issue that is in dispute? See Montgomery, 810 S.W.2d at 389-90; Manning v. State,
No. 06-01-00013-CR, 2002 WL 1332299, at *3 (Tex. App.-Texarkana 2002, no pet. h.).

 In this case, factors one and two are indelibly linked. The explicit and offensive
nature of the story obviously makes the State's case that the photographs were lewd much
stronger, especially in light of the relatively innocuous posing of the children in the
photographs. The very nature of the story, however, also fits this situation firmly within the
Grimes description for a factor two analysis. Once read by the jury, this is not the type of
evidence that could be filed away in some compartment of the mind and considered for
only a limited purpose, even if the trial court ordered the jury to do just that. The potential
the evidence has to "impress the jury in some irrational but nevertheless indelible way" is
so far beyond any typical situation that it is impossible to see any way in which its misuse
could be corrected.

 Factor three: The time involved was short.

 Factor four: Did the State need the evidence to prove a matter in dispute? The
story makes it more likely that Taylor used the photographs to satisfy his prurient interests. 
It does not (or at least should not) affect the jury's determination of whether the
photographs were actually lewd, which is what the State was required to prove. The State
used the story to buttress its argument that the photographs were actually lewd because,
surely if Taylor enjoyed such deplorable writing, the photographs are similarly deplorable. 
The State argues on appeal it could also have used the story to buttress its position that
the photographs were intentionally placed on the computer rather than accidentally pulled
up into a temporary file, which was one of the defensive arguments made by Taylor's
counsel.

 The only one of these arguments that is legitimate is the last one, and that is the
one that could most easily have been shown by a proper forensic evaluation of the hard
drive of Taylor's computer.

 Because of its ultimate and extreme inflammatory nature, the prejudice caused by
its admission, i.e., the likelihood that the jury would use it improperly, outweighed its
probative value. The inflammatory nature of this type of evidence-a story about the rape
of many children by a number of adults in graphic detail-is so extreme that no conceivable
instruction would have been sufficient to keep the jury from considering it when it was
determining Taylor's guilt for an offense that involved photographs of nude children. This
is most certainly the case in light of the fact that the critical question was whether the
photographs were lewd, and Taylor's main defensive argument was that they were not
lewd. The question was not whether Taylor was using them for lewd purposes or whether
Taylor considered them lewd. The question was whether the photographs were lewd. 
Ultimately, this evidence was such as to encourage resolution of material issues on an
emotional and improper basis rather than on the basis of the evidence on which the
allegations of wrongdoing were grounded.

 The trial court abused its discretion by allowing this story into evidence. When such
evidence is presented to a jury, for the reasons set out in detail above, it necessarily must
fall within the harm parameters set out by Tex. R. App. P. 44.2 as an error affecting the
substantial rights of the accused to a fair trial. (11)
 

Hearsay and Ineffective Assistance of Counsel

 Taylor further contends in two related points of error that the trial court erred by
admitting hearsay testimony and also that, if we conclude the trial objection was
inadequate, he received ineffective assistance of counsel.

 Taylor's hearsay complaints concern: 1) the accuracy of the copying procedure that
provided a predicate to the admission of the photographs; and 2) allegations that Taylor
had at times in the past purchased child pornography from Landslide (not resulting in the
purchase of these photographs).

 As previously discussed at length, Marshall testified he had copied Taylor's hard
drive. He testified the portions of the target hard drive containing the copy made of
Taylor's hard drive by the EnCase program were identical. He based his testimony on his
observation of two hash marks on his computer screen at the time the copying process
was completed-the acquisition hash and the verification hash. Marshall made no
recording of this in any form, although the EnCase software provides a verification process
that would have provided written documentation of the quality of the copying procedure. 

 The initial question is whether information observed on a computer screen,
generated not by a human source but setting out the results of a computer program in
analyzing data, is hearsay. Rule 801 defines a "statement" as an oral or written verbal
expression, or as the nonverbal conduct of a person if intended by the person as a
substitute for verbal expression. Tex. R. Evid. 801(a). Arguably, this should constitute
such a statement. When the rules were written, computers were not capable of performing
such analysis and at most would have provided raw data which would have to be analyzed
by a human. Now, the computer program performs the analysis and a human only looks
to see what result the program has reached. If the result shown is not the one desired, the
human does not perform an independent analysis, but looks for different ways to apply the
program to the problem. Under this scenario, there is arguably a statement being
made-just not by a human-but by an artificial intelligence.

 Without going into the details of this type of analysis, however, as pointed out by the
State, several courts of appeals have held that computer-generated information, whether
on a display or paper, is simply not hearsay because it falls outside the strict language of
the rule. This position is defensible and is apparently the sole position taken in Texas to
date for materials not input into a computer and simply printed out, but that result from
analysis done by the computer. (12) The statement by Marshall was not hearsay.

 Taylor next contends the trial court erred by allowing information that purported to
be portions of the business records of Landslide into evidence. (13) The State offered
testimony by Steve Nelson to show Taylor had either ordered or subscribed to an internet
service that provided child pornography. It became clear at trial that the time frame for
these alleged purchases was before 2000 and that Taylor had purchased a new computer
since that date. The State made no effort to show or suggest the pictures at bar were
purchased from that service. 

 The accounting and transaction records of Landslide were obtained by the State as
the result of a two-year investigation of the company. Nelson was the officer who had
managed the Landslide investigation and was the person who had reviewed the database
during the investigation. The State argues on appeal that these constitute summaries of
business records and were therefore admissible. This argument was never made at trial. 
The State introduced the evidence, not as summaries, but as the business records
themselves. Taylor's counsel objected to the introduction of the records because they
were not made available pursuant to the general discovery order covering the trial. 

 I'm going to object, Your Honor. He's trying to prove up business records,
hearsay records that we don't have. We haven't seen them. This goes to
our discovery motion. I'm going to object to this whole line of questioning. 


The trial court overruled the objection. 

 Testimony continued, and counsel then objected due to a lack of personal
knowledge by the witness about the records at issue. After a brief voir dire of the witness,
counsel restated his second objection as follows:

 I object, Your Honor. There was no personal knowledge. This person was
not present. This person does not know anybody that was-at the time these
records were made, he doesn't know anybody that was-he wasn't present. 
He knew nothing about it, how they were kept, who they were kept by, or
what was going on. There is no way that this person can prove up that as a
business record, and I object to it as hearsay.


 On appeal, Taylor first contends the evidence was inadmissible as a business
record because the information was actually a collection of excerpts prepared by Nelson
from Landslide's records. This is a more carefully phrased version of the objection made
at trial and adequately comports with that objection to preserve the claim for review. 

 We have reviewed the records. They are not the business records of Landslide;
they are portions of those records which were collated and excerpted by Nelson. They
were never tendered as "summaries," but as the records themselves. It is clear from the
discussion above they are not the business records of the company. The trial court thus
abused its discretion by allowing them to be admitted into evidence.

 The contention of error is sustained.

 We now look to see whether this error is such that it affected the substantial rights
of the accused. See Tex. R. App. P. 44.2(b). In making that determination, we apply the
standards set out above. We have recognized that the photographs are in no way linked
to any purchases through Landslide. The evidence was used by the State as support for
its position that the photographs were pornographic, based not on the photographs, but on
the fact Taylor had engaged in purchases of unknown, but presumably pornographic
(according to the statutory definition) images at a prior time. That evidence provided no
direct proof that Taylor committed the crime alleged in this case, but was used by the State
to show that the photographs on his hard drive were there intentionally and not as a result
of some mistake or accidental surfing of the internet. 

 There is no question this improperly admitted evidence is such that it added to the
strength of the State's case. We find the error did have more than a slight influence on the
verdict, and we therefore conclude the error affected Taylor's substantial rights in such a
way as to require a new trial. See Johnson, 43 S.W.3d at 4.

The Picture Book: "The Age of Innocence"

 Taylor finally contends the trial court committed reversible error by refusing to permit
him to introduce a collection of photographs entitled, "The Age of Innocence." He argues
that, because the question before the jury was whether the photographs at bar were lewd, (14)

he should be able to provide photographs contained in an art book, which would provide
the jury with some information from which it could make an intelligent determination of
whether the photographs at bar were lewd, for some reason other than because this
defendant read stories about sex involving children. He points out that during voir dire the
State suggested that pictures of nude children by anyone except a parent raised "questions
about the intent" and thus that the question about whether a picture constituted child
pornography was not based on the photograph, but on who possessed it.

 In short, Taylor argues the book should have been admitted into evidence because
the photographs he had in his possession were in no substantive way different from the
pictures found in that book.

 We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996); Montgomery, 810 S.W.2d at 379-80. We will not reverse a trial court whose ruling
was within the "zone of reasonable disagreement." Green, 934 S.W.2d at 102;
Montgomery, 810 S.W.2d at 391.

 Under the definition of relevance set out earlier, there is no question the evidence
could have been useful to aid the jury in determining the critical matter at issue: whether
the photographs were lewd. However, that is only the case if some court, somewhere, had
found the photographs in the art book were or were not lewd. The fact the book is readily
available at a local bookstore, or that it is sold worldwide by one of the world's largest
retailers without suffering criminal conviction, does not necessarily answer that question,
although it may suggest that a large number of people do not believe such photographs
are lewd. 

 The State suggests that allowing admission of such evidence would lead to a
competition between prosecution and defense, with both sides being allowed to put on
evidence of photographs that have or have not been found lewd. That is not a bad thing,
and we know that a trial court would be able to restrict the quantity of such examples to a
reasonable level. 

 We trust juries to reach conclusions that impact the lives of parties. They should
be given the tools necessary to reach such conclusions. We trust trial courts not to waste
too much time in providing those tools, but when the language of a statute uses terms that
are subject to interpretation, the jury should be provided with necessary information to
allow it to make an intelligent interpretation rather than being required to decide guilt based
on uninformed conjecture about the meaning of the words of a statute.

 Nevertheless, we believe that the decision about whether to admit this book into
evidence falls within the zone of discretion for the trial court and that the court could
reasonably decide the photographs would not be sufficiently helpful to require admission
into evidence. See Montgomery, 810 S.W.2d at 391. This point of error is overruled.


 Based on the errors set out above, we reverse the conviction and remand the case
for a change of venue and new trial.




 Donald R. Ross

 Justice


Date Submitted: September 13, 2002

Date Decided: October 17, 2002


Publish

1. The State and Taylor agreed to sever the last two counts, which alleged possession
of pornographic photographs of a child in sexual activity with a horse. However, the State
announced at oral argument it did not intend to pursue those allegations. 
2. This case was prosecuted by an assistant attorney general who, along with several
other assistants, were sworn in as assistant district and county attorneys for Red River
County.
3. Miranda v. Arizona, 384 U.S. 436 (1966).
4. It is noted Taylor was not indicted for accessing and downloading pictures, but for
possession of specific pictures.
5. "My name is Clayton Taylor. I live at 210 NE 2nd Street, Bogota Tx. My date of
birth is 12/17/61. During the last 20 months, I have engaged in viewing and downloading
of material of a nature that involved children under the age of 17 engaged in illegal under
age sexual acts. This material included pictures as well as short stories. I did this as
fantasy and have not let it interfere with the performance of my duty as a teacher within the
community. These acts were done knowing full well of the consequences and were used
only as masturbatory fantasies. I, hereby state that I have not been forced to make this
statement and do so voluntarily and under no duress."
6. These allegations were never brought before the trial court.
7. See footnote 1.
8. The Thomas case presents an analysis of the applicable caselaw, including United
States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976); Brady
v. Maryland, 373 U.S. 83 (1963). Material evidence favorable to the defense, which the
prosecutor is required under this rule of law to disclose is referred to as "Brady material."
9. See Bowen v. Maynard, 799 F.2d 593, 610 (10th Cir. 1986); Lindsey v. King, 769
F.2d 1034 (5th Cir. 1985); United States ex rel. Smith v. Fairman, 769 F.2d 386 (7th Cir.
1985).
10. Rodriguez v. State, 597 S.W.2d 917, 919 (Tex. Crim. App. 1980), vacated &
remanded on other grounds, 453 U.S. 906 (1981); Payne v. State, 516 S.W.2d 675, 677
(Tex. Crim. App. 1974); Yates v. State, 941 S.W.2d 357, 364 (Tex. App.-Waco 1997, pet.
ref'd).
11. The exhibit is fronted by a sheet of paper which, in magic marker, is titled as 
"Clayton Taylor's Story." That titling in itself does not accurately reflect the evidence. 
There is absolutely nothing to suggest that it is his story. It is something he possessed, not
something he wrote. The evidence shows the story was taken from the internet.

12. Stevenson v. State, 920 S.W.2d 342, 343 (Tex. App.-Dallas 1996, no pet.); Ly v.
State, 908 S.W.2d 598, 600 (Tex. App.-Houston [1st Dist.] 1995, no pet.); Smith v. State,
866 S.W.2d 731, 732 (Tex. App.-Houston [14th Dist.] 1993, no pet.); Burleson v. State,
802 S.W.2d 429, 439-40 (Tex. App.-Fort Worth 1991, pet. ref'd). 
13. Landslide was not itself a pornography site. It was a service that verified credit
card information for a number of websites that provided pictures for viewing.
14. The Dallas court discussed the meaning of the term lewd in the following excerpt
from Alexander v. State, 906 S.W.2d 107, 110 (Tex. App.-Dallas 1995, no pet.). The court
concluded, however, that it was not necessary to provide any portion of this information to
a jury. Its analysis follows.


 Under the federal statute, to determine whether a visual depiction of
a child constitutes a lewd or lascivious exhibition of genitals, federal courts
consider whether: (1) the focal point of the visual depiction is the child's
genitalia; (2) the place or pose of the child in the photograph is sexually
suggestive; (3) the child is depicted in an unnatural pose or inappropriate
attire; (4) the child is fully or partially clothed or nude; (5) the visual depiction
suggests sexual coyness or a willingness to engage in sexual activity; or (6)
the visual depiction is intended or designed to elicit a sexual response in the
viewer. Several federal courts have recognized that a photograph is
lascivious when "the photographer array[s] it to suit his particular lust," noting
that "lasciviousness is not a characteristic of the child photographed but of
the exhibition which the photographer sets up for an audience that consists
of himself or likeminded pedophiles." 

 We find the reasoning of the federal decisions persuasive and, thus,
adopt their interpretations of "lewd" or "lascivious" exhibition of genitals for
purposes of the Texas statute. We conclude that when a child is the subject
of a photograph, lewdness is not to be considered as a characteristic of the
child, but rather as a characteristic of the photograph itself. Moreover, we
conclude that whether the content of a photograph constitutes a lewd or
lascivious exhibition of a child's genitals depends on the intent of the
photographer. 


(Citations omitted.)